HAGEN, Respondent, vs. THOMPSON and another, Appellants.

*October 16—November 18, 1947.*

For the appellants there was a brief by *Stafford & Stafford* of Eau Claire, and oral argument by *Harold E. Stafford*.

For the respondent there was a brief by *Frank E. Betz* and *Ramsdell & King,* all of Eau Claire, and oral argument by *Bailey Ramsdell.*

WICKHEM, J. . Plaintiff was employed at the United States Rubber plant which was located on Wisconsin street in Eau Claire. On June 26, 1946, he left his place of employment at 11 o'clock at night to return to his home which was about one block west of the factory and on the south side of the same street. He walked one block to the west and on the north sidewalk of Wisconsin street to the intersection of Dewey and Wisconsin streets. He then walked south across Wisconsin street, turned west and crossed Dewey street. He

was struck by a southbound car driven by defendant, and sustained a badly fractured leg.

Defendant's first contention is that plaintiff was guilty of contributory negligence as a matter of law and that this negligence was as great as that of defendant. We deem this contention to be without merit. Plaintiff testified that he crossed Dewey street on the crosswalk; that when he was half way across the street he saw defendant's car approaching some fifty feet north of the intersection which would put it more than one hundred feet away from the crosswalk. His second view of the Thompson car was when the latter was about forty feet away and he was then in its path and within about eight feet of the curb. Just at that time his attention was diverted to a car parked just south of the restraining line on the west side of Dewey street. A man was approaching this car with the evident purpose of starting and operating it and plaintiff was afraid that the car might back into his path. He was struck by the right fender of defendant's car, hit on the left leg, and he was ultimately 'picked up some twenty feet south of the crosswalk. There is evidence that plaintiff was not on the crosswalk but to the south of it. It is contended that the physical facts render incredible plaintiff's evidence to the contrary. We deem the contention unsound. Plaintiff's location considerably to the south of the crosswalk is not conclusive and neither is the fact that he was struck on the left leg. We are of the view that there was a jury question whether plaintiff was in the crosswalk. Defendant's car was more than one hundred feet away from him when he was about half way across the street. There is no evidence that the car was coming at such a rate of speed as to give notice of the fact that its driver did not intend to yield the right of way to plaintiff. Its speed was not such as to arouse any particular concern on plaintiff's part as to safety in proceeding. Plaintiff had a right to put considerable reliance at that stage on his right of

way as a pedestrian. In *McDonald v. Wickstrand*, 206 Wis. 58, 61, 238 N. W. 820, this court said:

". . . the fact that he has the right of way, coupled with a reasonable observation before entering upon the crossing, are circumstances to be considered by the jury in determining whether or not his conduct is negligent."

When plaintiff next observed defendant's car it was about forty feet away from him. By that time he was not only in its path but nearly in a position of safety. A jury could conclude that due to the diversion of his attention by the maneuvers of the person approaching the parked car to his left, as well as the fact that plaintiff had to proceed in one direction or another to get out of the way of defendant, his conduct exhibited reasonable care for his safety. We conclude that there was a jury question as to plaintiff's contributory negligence.

It is contended that submission to the jury of the question of management and control was error. This is true. There was no evidence of negligent management and control in this case. We refer to the observations heretofore made in *Reynolds v. Madison Bus Co.* 250 Wis. 294, 26 N. W. (2d) 653. This is a plain case of negligent lookout. Defendant simply did not see plaintiff and for this reason made no effort to yield the right of way or so to maneuver his car as to avoid hitting him. The matter is of no consequence here, however, since there is no finding of contributory negligence and no occasion to compare plaintiff's negligence with that of defendant.

The next contention is that the damages are excessive. Plaintiff was awarded $15,000 over and above his medical expenses. He was a janitor receiving $1 per hour for day work and $1.04 for nightwork. He worked eight hours a day and his average earnings were $60 a week. He theretofore worked as a farm hand and in a laundry and for the General Motors Company. He was sixty-three years old and had an

expectancy of 12.26 years. His injuries consisted of a compound fracture of both bones of the lower leg, together with contusions and abrasions of the face and scalp. He was in the hospital nearly four months and his hospital bill was $906.03 and his medical expense was $250. The abrasions and bruises are completely healed and the sole question relates to damages for the broken leg. Ordinarily a broken leg will not sustain an award of $15,000 so that it is necessary to consider the special circumstances of plaintiff's particular injury. The medical testimony is that after the accident the bones of the injured leg were sticking out through the skin and it was necessary to remove fragments of loose bone, to treat the patient for possible infection and shock. The latter developed a low-grade infection with drainage; pressure sores from the cast required the latter to be loosened. The bone injury was very severe and the doctors have been unable to establish a union of the bones. It is clear from the testimony that the leg is not of any appreciable value in its present condition. The foot turns in at 90 degrees; due to the lack of union there is mobility at the site of fracture and muscle pull increases the deformity. The doctors have not been able to get any practical use out of a cast or to get enough tension to maintain the bones in proper position. They are of the view that the bones will not get better under present conditions. There may ultimately be some union but this is stated to be unlikely. As a result of infection there is dead matter in the bone and a more serious infection may light up at almost any time. Amputation may turn out to be the wisest course because the leg is of no present value, but if amputation is attempted there is a chance that the first amputation may not be high enough on the leg to get behind the infection and more than one operation may be necessary. There is a possibility of cleaning up the infection and ultimately doing some bone grafting or metal plating but the doctors are not willing to speculate on the probable success of this procedure and, in

any case, it would take several years.    To leave the leg in its present condition might result in a chronic osteomyelitis which would break open, drain, and require frequent surgical procedures.

The foregoing indicates that this case cannot be disposed of by the bald statement that a jury awarded $15,000 for a broken leg.    Plaintiff was horribly and permanently injured and, considering pain, suffering, wage loss, and the likelihood of a permanent injury requiring frequent attention over a long period of years, we cannot say that the award is excessive.

*By the Court.*—Judgment affirmed.