LUTZ, Respondent, v. SHELBY MUTUAL INSURANCE
COMPANY and another, Appellants.

*No. 56 (1974). Submitted under sec. (Rule) 251.54 October 30,
1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 426.)

744

For the appellants the cause was submitted on the brief of *Kasdorf, Henderson, Dall, Lewis & Swietlik,* attorneys, and *Werner E. Scherr* of counsel, all of Milwaukee.

For the respondent the cause was submitted on the brief of *Donald J. Jacquart, S. C.* and *Marvin Resnick, S. C.,* attorneys, and *Donald J. Jacquart, S. C.* of counsel, all of Milwaukee.

BEILFUSS, J. On appeal, defendants contend that a new trial should be granted because the trial court erred in instructing the jury on the duty of a motorist to yield to a pedestrian in an unmarked crosswalk and in refusing to give the emergency instruction. The defendants also argue a new trial is warranted in the interest of justice because of the perverse nature of the verdict as reflected by the finding of no negligence on the part of the plaintiff and the award of excessive damages for pain, suffering and disability. The plaintiff cross-appealed, contending that the trial court erred in ordering a reduction in damages in lieu of a new trial on that issue.

As a general rule, of course, a trial court should instruct the jury with due regard to the facts of the case. *Benz v. Zobel* (1949), 255 Wis. 542, 39 N. W. 2d 713. It is error for a court either to refuse to instruct on an issue which is raised by the evidence or to give an instruction on an issue which finds no support in the evidence.[1] Where the court has erroneously given or refused to give an instruction, however, a new trial is

---

[1] *See: Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.* (1965), 26 Wis. 2d 292, 132 N. W. 2d 510.

not warranted unless the error is determined to be prejudicial.[2] The test to be applied in determining whether such an error is prejudicial is the probability and not mere possibility that the jury was misled thereby.[3] Stated another way, an error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred.[4]

At the close of the evidence, the trial judge proposed to instruct the jury on the motorist's duty of care with respect to a pedestrian crossing the roadway in a marked or unmarked crosswalk. The defendants objected to that instruction and to the reading of sec. 340.01 (10), Stats., which defines an unmarked crosswalk, on the ground that there was no evidence in the record to support a finding that Mrs. Lutz may have been in an unmarked crosswalk at the time of the accident. The objection was noted and the instruction was given.

On appeal, the defendants contend the trial court's giving of the unmarked crosswalk instruction, together with the reading of the statutory definition of an unmarked crosswalk, was prejudicial error. The defendants assert that there is no evidence which places Mrs. Lutz in an unmarked crosswalk. Further, the defendants argue that there was no evidence of record from which the jury could conclude, pursuant to the statutory definition, that an unmarked crosswalk in fact existed on the north side of the intersection.

[2] *See: Schmit v. Sekach* (1966), 29 Wis. 2d 281, 139 N. W. 2d 88; *United States Fidelity & Guaranty Co. v. Milwaukee & Suburban Transport Corp.* (1962), 18 Wis. 2d 1, 117 N. W. 2d 708.

[3] *Nashban Barrel & Container Co. v. Parsons Trucking Co.* (1971), 49 Wis. 2d 591, 182 N. W. 2d 448.

[4] *See: Crowder v. Milwaukee & Suburban Transport Corp.* (1968), 39 Wis. 2d 499, 159 N. W. 2d 723; *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626. *Also see:* sec. 274.37, Stats.

The statutory definition of an unmarked crosswalk contained in sec. 340.01 (10) (b), Stats., provides:

*"Unmarked crosswalk.* In the absence of lines or markings, that part of a roadway, at an intersection, which is included within the transverse lines which would be formed on such roadway by connecting the corresponding lateral lines of the sidewalks on opposite sides of such roadway or, in the absence of a corresponding sidewalk on one side of the roadway, that part of such roadway which is included within the extension of the lateral lines of the existing sidewalk across such roadway at right angles to the centerline thereof, except in no case does an unmarked crosswalk include any part of the intersection and in no case is there an unmarked crosswalk across a street at an intersection of such street with an alley."

Under this definition, the existence and nature of an unmarked crosswalk appear to be dependent upon the physical nature of the intersection in question. While there is no testimony in the record as to the precise nature of the intersection, the police report of the accident, which was admitted as an exhibit, contains a general diagram of the intersection. That diagram shows that at the point where it intersects with West Ruby Avenue, North Hopkins runs in a generally northwest-southeast direction. West Ruby Avenue runs east and west. The two streets form a T-intersection, as West Ruby is not shown as continuing through North Hopkins to the east. Several witnesses agreed that there is a sidewalk on the north side of West Ruby. It appears that the jury could conclude, based on this record, that an unmarked crosswalk, as defined by statute, existed on the north side of the intersection.

In response to a question on cross-examination, Mrs. Murphy stated that while she did not believe that Mrs. Lutz was within such a crosswalk at the time of the accident, it was possible that she could have been. Mrs. Murphy is the only witness who placed Mrs. Lutz on

the north side of the intersection as she started to cross North Hopkins. The diagram of the accident, which was drawn by Patrolman Thalman, shows Mrs. Lutz crossing midblock north of the intersection. Thalman testified that this diagram was based upon telephone conversations with the parties on the evening of the accident. No officer was called to the scene of the collision. Mrs. Lutz denied telling Officer Thalman that she crossed north of the intersection.

It is submitted that there was evidence of record from which the jury might have concluded that Mrs. Lutz was on the north side of the intersection and within the confines of the unmarked crosswalk at the time of the accident. If Mrs. Murphy's version of the facts is accepted, at some point in time Mrs. Lutz would have to be in the unmarked crosswalk. *Webster v. Heyroth* (1950), 257 Wis. 238, 43 N. W. 2d 23; *Hagen v. Thompson* (1947), 251 Wis. 484, 29 N. W. 2d 515. It was not error, therefore, to give the instruction.

This court has held that a pedestrian who fails to yield the right-of-way to vehicles while on a roadway at a place other than a crosswalk is negligent. *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 140 N. W. 2d 267. The jury was so instructed but failed to find Mrs. Lutz negligent. It is obvious the jury chose to disbelieve Mrs. Murphy's version of the accident. Even under that version, the issue of Mrs. Lutz' presence in an unmarked crosswalk was raised. There is no prejudicial error where the verdict reveals that the jury accepted plaintiff's version and rejected defendants' version.[5]

The defendants next argue that the trial court erred in refusing to instruct the jury relative to Mrs. Murphy's liability for her actions when confronted with an emergency. The emergency doctrine relieves a person of liability for his actions when faced with an emergency

---

[5] *See: Sambs v. Brookfield* (1975), 66 Wis. 2d 296, 305, 224 N. W. 2d 582.

which his conduct did not create or help to create.[6] As the emergency rule applies to the operators of motor vehicles involved in accidents, this court has stated:

"There are three basic requirements which must be met before the emergency doctrine can be applied. First, the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency. Second, the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action. Third, the element of negligence being inquired into must concern management and control before the emergency doctrine can apply. Unless a favorable finding on each of these elements is made, the emergency doctrine cannot be applied to a course of conduct which led to an automobile accident." *Geis v. Hirth* (1966), 32 Wis. 2d 580, 586, 146 N. W. 2d 459.

In determining whether the emergency instruction should be given in a particular case, the evidence must be viewed in the light most favorable to the person requesting it. The question here, then, is whether, under Mrs. Murphy's version of the accident, the jury could have found that each element of the emergency rule was present. If it could, the instruction should have been given and failure to do so was error.[7]

The jury was instructed on Mrs. Murphy's obligation as to the management and control of her automobile and as to the sounding of her horn. We conclude that even under Mrs. Murphy's version no true emergency existed from a time standpoint. Her testimony was that Mrs. Lutz stepped off the curb outside any crosswalk about 75 feet in front of her vehicle. She stated that

[6] *Crossman v. Gipp* (1962), 17 Wis. 2d 54, 115 N. W. 2d 547; *Papacosta v. Papacosta* (1957), 2 Wis. 2d 175, 85 N. W. 2d 790.

[7] *Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557; *McCrossen v. Nekoosa Edwards Paper Co.* (1973), 59 Wis. 2d 245, 208 N. W. 2d 148.

she was going about 28 miles per hour, that she tapped her brake and slowed down, and that she could have stopped but did not because she assumed Mrs. Lutz would see her in time to yield the right-of-way.

It is true that a motorist has the right to assume that a pedestrian crossing outside a crosswalk will yield the right-of-way and the jury was so instructed. However, when it becomes apparent that the pedestrian is creating a danger by not keeping a proper lookout, the motorist must make further efforts to avoid the collision.[8] Mrs. Murphy stated that she did not sound her horn in an attempt to warn Mrs. Lutz. Under this state of facts, even if it could be considered that an emergency situation arose when Mrs. Lutz failed to observe the approach of Mrs. Murphy and continued to cross the street, the emergency was due, in part at least, to Mrs. Murphy's failure to warn as she was required to do under the law. In sum, there was no evidence on which the jury could base a finding that the necessary limited time interval existed or that the emergency, if there was one, was not due in part to the actions of Mrs. Murphy. As a result, the emergency instruction was not warranted and there was no error in refusing to give it.

The defendants seek a new trial in the interest of justice on the ground that the verdict was perverse. They argue that, under any view of the evidence, Mrs. Lutz was negligent as a matter of law and that the damages awarded were grossly excessive, so as to reflect passion and prejudice.

The jury determined that Mrs. Lutz was free of any negligence. When challenged on appeal, a jury's findings must be sustained if there is any credible evidence which, under any reasonable view, supports such find-

---

[8] *See: Post v. Thomas* (1942), 240 Wis. 519, 3 N. W. 2d 344; *Geis v. Hirth, supra; Kellogg v. Chicago & N. W. Ry.* (1870), 26 Wis. 223, 233, 234, 237, 238.

ings. The defendants point out that even under plaintiff's version of the accident it is clear that Mrs. Lutz did not see Mrs. Murphy prior to being struck. Assuming that Mrs. Lutz in fact looked to the north before crossing the street, as defendants argue, she was negligent in failing to see Mrs. Murphy. A pedestrian is negligent as to lookout, defendants point out, when, even though he looks for oncoming vehicles he fails in the exercise of ordinary care to see what could have been seen.

Mrs. Lutz testified that she looked both ways before attempting to cross North Hopkins and saw no vehicles approaching from the north. She also stated that her view to the north was unobstructed for at least two blocks. After entering the crosswalk, Mrs. Lutz kept watching the truck approaching from the south because the apparent danger was from that direction, and did not again look to the north. She did not see Mrs. Murphy's vehicle before being struck. The defendants contend that Mrs. Lutz should have or could have seen the Murphy car when she looked the first time. However, Mrs. Lutz testified that she took about 17 steps from the curb to the center line and waited for "a couple of seconds" for the truck to pass before being struck. Keeping in mind the visibility to the north, the amount of time which passed between the time Mrs. Lutz stepped off the curb until she was struck, and the fact that she did not again look to the north after leaving the curb, it is not incredible that Mrs. Lutz might not have been able to see Mrs. Murphy's automobile at the time she did look.

The jury was instructed on Mrs. Lutz' obligation to "see what could be seen." Once in the crosswalk and in or past the center of the street, Mrs. Lutz was entitled to assume that oncoming traffic would yield. The jury unquestionably accepted Mrs. Lutz' version of the accident and rejected Mrs. Murphy's. Where the testimony is

in conflict this court will not upset a verdict by ordering a new trial in the interest of justice because credibility of witnesses and the weight to be given their testimony are matters for the jury.[9] We cannot hold as a matter of law that Mrs. Lutz was negligent as to lookout.

The jury award of $15,000 for pain, suffering and disability is claimed to be grossly excessive. The defendants contend that even as reduced by the trial court to $9,000, the award is excessive.

If a jury award for pain and suffering appears to be the result of passion or prejudice or failure to follow instructions, the trial court and this court on appeal should set the verdict aside or modify it. An award of damages will be sustained, however, if it is supported by credible evidence.[10]

By motions after verdict defendants sought a new trial on various grounds, including insufficiency of evidence and perversity of verdict. In its memorandum decision the trial court concluded that while the jury's assessment for pain, suffering and disability was excessive, that excessiveness neither resulted from nor evidenced perversity. This court is inclined to defer to the decision of the trial court in refusing to grant a new trial in the interest of justice.[11]

In determining that the jury's award did not render the verdict perverse, the trial court reviewed the evidence as to the nature and extent of Mrs. Lutz' injuries. That review is an accurate summary of the record in this case. The record reveals that Mrs. Lutz was

[9] *See: Valiga v. National Food Co.* (1973), 58 Wis. 2d 232, 206 N. W. 2d 377; *Milbauer v. Transport Employees' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 203 N. W. 2d 135.

[10] *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. 2d 604, 106 N. W. 2d 274; *Hernke v. Northern Ins. Co.* (1963), 20 Wis. 2d 352, 122 N. W. 2d 395.

[11] *See: Wojkiewicz v. American Family Mut. Ins. Co.* (1967), 33 Wis. 2d 351, 147 N. W. 2d 249; *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. 2d 597, 607, 608, 117 N. W. 2d 725.

thrown down as the result of the impact, struck her head on the pavement and was dazed but not rendered unconscious. She suffered a lump on her head and considerable pain in her sides, hips, neck and head. In her various visits to Dr. Fetherston, she complained of pain in her head, hip, neck, back and shoulders. While the pain had decreased at the time of the trial, she still could not walk comfortably and was unable to raise her arms above her head. For two months after the accident Mrs. Lutz was unable to do her usual housework and her shopping had to be done by her son and neighbors.

Dr. Fetherston testified that in his opinion the symptoms of pain were attributable to the accident. Dr. Bruno, the orthopedic surgeon, stated that the compression fracture of Mrs. Lutz' lumbar vertebra was also, in his opinion, caused by the accident. The condition was permanent and would cause pain. Dr. Bruno prescribed a back corset for Mrs. Lutz, to be worn for three months. Mrs. Lutz testified that she had difficulty putting the corset on. Dr. Bruno concluded that while Mrs. Lutz' back condition was permanent it would not deteriorate and the prognosis was generally good.

Excessiveness alone is not sufficient to label a verdict perverse and we find no evidence to indicate that the verdict reflects "highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair." *Redepenning v. Dore* (1972), 56 Wis. 2d 129, 134, 201 N. W. 2d 580. Defendants cite several cases which indicate that other claimants with "more serious" injuries obtained less favorable recoveries. This court has held that each case must be considered on its own facts and record and has indicated that great care must be exercised in considering other cases with comparable injuries.[12] We agree with the

---

[12] *Kobelinski v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 504, 525, 202 N. W. 2d 415.

trial court in its conclusion that the jury award of $15,000 for pain, suffering, and disability neither resulted from nor evidenced perversity.

The defendants contend that the reduced amount of $9,000 for pain, suffering and disability as set by the trial court is still excessive under the evidence. Plaintiff argues that the court erred in making any reduction. A trial court finding that a jury award is excessive will be overturned only for an abuse of discretion.[13] The test to determine abuse is whether, if the trial court had been sitting as the sole finder of fact and had fixed the plaintiff's damages in the disputed amount, this court would still disturb the finding.[14] If there is a reasonable basis for the trial court's determination as to the proper amount, it will be sustained.[15]

As noted, the trial court fully summarized the evidence relating to the nature and extent of Mrs. Lutz' injuries. Mrs. Lutz was eighty-four years old at the time of the accident and eighty-five years old at the time of trial. Age, of course, is a factor to be considered in determining the amount of damages which should be awarded for future pain, suffering and disability. The court considered this fact in making its reduced award. We find no abuse of discretion either in making the reduction or in setting damages at $9,000.

*By the Court.*—Judgment affirmed. Plaintiff to tax three-fourths of her statutory appeal costs.

---

[13] *Crotty v. Bright* (1969), 42 Wis. 2d 440, 167 N. W. 2d 201; *Breunig v. American Family Ins. Co.* (1970), 45 Wis. 2d 536, 173 N. W. 2d 619.

[14] *Wozniak v. Local 1111 of UE* (1973), 57 Wis. 2d 725, 205 N. W. 2d 369; *Kenwood Equipment, Inc. v. Aetna Ins. Co.* (1970), 48 Wis. 2d 472, 180 N. W. 2d 750, 182 N. W. 2d 241.

[15] *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235.