Cynthia A. FISCHER, by her Guardian, David Fischer, Tammy Fischer, Amy Fischer and Carrie Fischer, Plaintiffs-Appellants,

v.

Badri N. GANJU, M.D., and Marvin G. Jumes, M.D., Defendants-Respondents.

Supreme Court

*No. 90–1863. Oral argument February 25, 1992.—Decided June 16, 1992.*

(Also reported in 485 N.W.2d 10.)

For the plaintiffs-appellants there was a brief by *Roger Pettit* and *Petrie & Stocking, S.C.,* Milwaukee and oral argument by *Mr. Pettit.*

For the defendant-respondent, Badri N. Ganju, M.D., there was a brief by *Donald R. Peterson, Peter F. Mullaney* and *Peterson, Johnson & Murry, S.C.,* Milwaukee and oral argument by *Donald R. Peterson.*

For the defendant-respondent, Marvin G. Jumes, M.D., there was a brief by *Lee F. Fehr* and *Nash, Spindler, Dean & Grimstad,* Manitowoc and oral argument by *Mr. Rusboldt.*

Amicus curiae brief was filed by *Steven C. Zach, Amanda J. Kaiser* and *Boardman, Suhr, Curry & Field,* Madison for the State Medical Society of Wisconsin.

Amicus curiae brief was filed by *Todd M. Weir* and *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.,* Milwaukee for the Civil Trial Counsel of Wisconsin.

Amicus curiae brief was filed by *Robert A. Slattery, D. Sean O'Lochlayne* and *Slattery & Hausman, Ltd.,* Milwaukee for the Wisconsin Academy of Trial Lawyers.

HEFFERNAN, CHIEF JUSTICE. This is an appeal by Cynthia A. Fischer and her immediate family (plaintiffs) from a judgment of the circuit court for Sheboygan county, Gary Langhoff, circuit judge, which granted judgment on the verdict finding that the negligence of Badri N. Ganju, M.D., and Marvin G. Jumes, M.D. (defendants) was not a cause of Cynthia Fischer's injuries. The complaint was dismissed with prejudice. The appeal was accepted upon the certification of the court of appeals. We affirm the circuit court.

The specific issue certified by the court of appeals is whether *Ehlinger v. Sipes,* 155 Wis. 2d 1, 454 N.W.2d 754 (1990) (*Ehlinger II*), substantively changed the law of causation in medical malpractice cases when the malpractice allegedly creates an increased risk of injury to a plaintiff's pre-existing medical condition. We conclude that *Ehlinger II* addressed only the plaintiff's burden of production on causation necessary to survive a motion to dismiss or motion for directed verdict for insufficient evidence. Once the question of causation is submitted to the trier of fact, the issue is the same as in other negligence causes of action: was the defendant's negligence a substantial factor in producing the plaintiff's injuries? Because the jury instructions submitted to the jury in this case adequately stated the law of causation, and

because *Ehlinger II* did not substantively change that law, we affirm the circuit court.

The facts are as follows. Cynthia Fischer was admitted to Plymouth Hospital (now Valley View Medical Center) on July 13, 1985, complaining of diarrhea, vomiting, rectal bleeding and abdominal pain. The admitting physician, Dr. Michael Jacquat, diagnosed her condition as acute inflammatory bowel disease. He referred Mrs. Fischer to Dr. Badri Ganju for consultation. Dr. Ganju, a general surgeon, examined Mrs. Fischer and tentatively diagnosed an infectious, inflamed colon (colitis) or inflammatory bowel disease.

On July 14, 1985, Dr. Ganju performed a diagnostic examination of the colon, which revealed an inflamed sigmoid colon. He prescribed preventive treatment referred to as "medical management," which involves fluid replacement and administration of antibiotics or steroids.

On July 16, 1985, Mrs. Fischer complained of nausea and abdominal pain. Dr. Ganju determined that her kidneys were not functioning, and ordered increased fluids. Several hours later, it was determined that Mrs. Fischer was suffering from fulminating colitis, and that a colectomy was necessary. Dr. Ganju successfully performed an emergency subtotal colectomy and ileostomy that evening. Dr. Marvin Jumes was the attending anesthesiologist. Mrs. Fisher's post-operative condition was satisfactory and stable, and both Dr. Ganju and Dr. Jumes believed that her condition had stabilized.

On July 17, 1985, Mrs. Fischer suffered a hypotensive episode, and her condition deteriorated rapidly. Dr. Ganju placed a monitoring catheter in Mrs. Fischer, and later ordered her transferred to Froedtert Memorial Hospital for dialysis. At some point during the transfer, Mrs. Fischer lapsed into a permanent vegetative state due to

843

an inadequate supply of oxygen to her brain. Upon admission to Froedtert, Mrs. Fischer was comatose and unresponsive. She has since remained in a permanent vegetative state.

Mrs. Fischer and her immediate family sued Dr. Ganju, Dr. Jumes, Dr. Jacquat and Dr. Mark Sharon, alleging negligence in their treatment and care of Mrs. Fischer.[1] In an amended complaint filed October 8, 1986, the plaintiffs alleged that Dr. Ganju failed to properly diagnose and recognize the severity of and adequately manage Mrs. Fischer's condition and that he failed to operate upon Mrs. Fischer in a timely fashion. The plaintiffs also alleged that Dr. Jumes failed to prepare Mrs. Fischer properly for surgery and failed to monitor her adequately during and after surgery. The complaint further alleged that the joint and several negligence of the defendants was a proximate cause of Mrs. Fischer's injuries.

A jury trial was conducted in January, 1990. At the close of the evidence, the defendants requested the court to instruct the jury pursuant to standard jury instruction Wis. J.I.—Civil 1023. The defendants' proposed instruction stated:

> The cause questions ask whether there was a causal connection between the negligence of any person and the injury. These questions do not ask about "the cause," but rather "a cause." The reason for this is that there may be more than one cause of an injury. The negligence of one person may cause an injury or the combined negligence of two or more persons may cause it. Before you find that a person's negligence was a cause of the injury, you must find that his

---

[1]The jury found that Dr. Jacquat and Dr. Sharon were not negligent. That portion of the judgment has not been appealed.

negligence was a substantial factor in producing the injury.

The negligence of one person alone may produce injury, or the acts or omissions on the part of two or more persons, or other conditions beyond anyone's control may jointly produce the injury. Before the relationship of cause and effect can be found to exist, it must appear that the negligence of one or more of the physicians, Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat, if found by you, was a substantial factor in producing the resulting condition; that is to say, it was a factor actually operating and which had the substantial effect in producing the condition as a natural result.

The evidence indicates without dispute that when Cynthia Fischer was first seen by Badri Ganju, Marvin Jumes, Mark Sharon and Michael Jacquat and placed herself under their care, she was then suffering from an inflammatory bowel disorder. Her physical condition at that time cannot be regarded by you in any way as having been caused or contributed to by any negligence on the part of Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat. Questions 1, 3, 5 and 7 ask you to determine whether the condition of Cynthia Fischer's health, as it was when she placed herself under each doctors' care, has been aggravated or further impaired as a natural result of Badri Ganju's, Marvin Jumes's, Mark Sharon's or Michael Jacquat's treatment of her.

If you believe from the evidence that the present condition of Cynthia Fischer's health may have been caused by the negligent treatment of either Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat or by the processes and developments of Cynthia Fischer's prior physical condition, then you may not find the negligence of Badri Ganju, Marvin Jumes, Mark Sharon and/or Michael Jacquat was a

cause of Cynthia Fischer's condition unless you are able to conclude that the negligence was a substantial factor in producing the injury.

It will, therefore, be necessary for you to distinguish and separate, first, the natural results and damage that flow from Cynthia Fischer's original physical condition and, second, those that flow from Badri Ganju's, Marvin Jumes's, Mark Sharon's and/or Michael Jacquat's treatment and allow Cynthia Fischer only such damages as you are satisfied to a reasonable certainty, from the greater weight of credible evidence, naturally resulted from the treatment by Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat.

Plaintiffs objected to the standard instruction. Plaintiffs argued that the final paragraph of the proposed instruction was duplicative and that it incompletely stated the law of causation.

Plaintiffs submitted an alternative proposed instruction based in part upon *Ehlinger v. Sipes,* 148 Wis. 2d 260, 434 N.W.2d 825 (Ct. App. 1988) (*Ehlinger I*). The plaintiffs' proposed causation instruction provided:

The cause questions ask whether there was a causal connection between the negligence of any person and the injury. These questions do not ask about "the cause," but rather "a cause." The reason for this is that there may be more than one cause of an injury. The negligence of one person may cause an injury or the combined negligence of two or more persons may cause it. Before you find that a person's negligence was a cause of the injury, you must find that his negligence was a substantial factor in producing the injury.

In determining the cause question, you may take into consideration whether one or more of the defendants conduct increased the risk of harm to the plaintiff. In other words, if one or more of the doctors negligent acts or omissions substantially increased the risk of harm to Mrs. Fischer, you must determine whether that increased risk of harm was a substantial factor in producing the injury actually sustained by Mrs. Fischer. You have heard evidence that when Cynthia Fischer was first seen by the defendants, she was suffering from an inflammatory bowel disorder. While her physical condition at that time cannot be regarded by you as having been caused or contributed to by any negligence on the part of the defendants, you have also heard evidence that individuals with such a condition as Mrs. Fischer suffered upon her admission to the hospital, with proper medical care and management do not sustain the outcome that Mrs. Fischer sustained. If you believe from the evidence that the negligence of one or more of the defendants increased the risk to Mrs. Fischer of sustaining the type of outcome that she did sustain and, that that increased risk was a substantial factor in causing Cynthia Fischer's ultimate harm, then you may conclude that the negligence of the defendants caused Mrs. Fischer's resultant injury.

The trial court rejected the plaintiffs' proposed instruction, stating that "the 1023 instruction as modified does adequately and appropriately and properly set forth the instruction on causation."

The jury returned a verdict in favor of the defendants. The jury found that both Dr. Ganju and Dr. Jumes were negligent, but that their negligence was not a cause of Mrs. Fischer's injuries.

Plaintiffs moved for a new trial on the grounds that the trial court erred by not submitting plaintiffs'

847

requested cause instructions, and that the interest of justice required a new trial be granted because the instructions probably misled the jury and prevented the real controversy from being tried. On March 29, 1990, the circuit court denied plaintiffs' motion, concluding that the standard instruction given was adequate, that *Ehlinger I* did not mandate any change in the standard medical malpractice cause instructions, and that the instruction given came within the purview of *Ehlinger I.*

On May 2, 1990, this court affirmed *Ehlinger I. Ehlinger II, supra.* The plaintiffs assert on appeal that *Ehlinger II* substantively changed the law of causation in medical malpractice cases involving negligent misdiagnosis or omission. We disagree, and affirm the circuit court's judgment.

The first question which must be considered is whether the plaintiffs waived any objection to the causation instruction. The defendants' instruction consisted of five paragraphs—the first four dealt specifically with causation, the fifth with damages. All five were directly adapted from Wis. J.I.—Civil 1023. At the instruction conference, plaintiffs' objected only to the fifth and final paragraph, which dealt with damages. The defendants argue that therefore any objection to the first four paragraphs, the causation instructions, was waived. Section 805.13(3), Stats.[2] We disagree.

While the plaintiffs objected specifically to the fifth paragraph, the reasons set forth at the instruction con-

---

[2]Section 805.13(3), Stats., provides in part:

Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.

ference called into question the appropriateness of the entire causation instruction. Counsel for plaintiffs' stated:

> Reason for the objection is I think No. 1, duplicative of the preceding paragraph regarding the cause of the injuries and No. 2, it only half states the question whether or not any negligence of doctors caused Mrs. Fischer's illness. And in that respect I have requested a jury instruction that has been filed with the Court based upon Wisconsin case law and either I guess my objection is either that that last paragraph not be given or if it is given that the Court want to explain the proposed instruction submitted by the plaintiffs based upon [*Ehlinger I*].

As set forth *supra* at 847–848, plaintiffs' proposed instruction completely restated the causation question. Thus, plaintiffs submitted an alternate instruction and linked that instruction to a particularized objection. This is sufficient to preserve an issue for appeal. *In re C.E.W.*, 124 Wis. 2d 47, 54, 368 N.W.2d 47 (1985). Moreover, when this court reviews jury instructions, it is required to consider the instructions as a whole and in their entirety. *Betchkal v. Willis*, 127 Wis. 2d 177, 187–88, 378 N.W.2d 684 (1985). Therefore where a party objects to part of an instruction as erroneous, this court must review the entire instruction to determine whether the error, if there be one, is prejudicial.

The plaintiffs' first argument on appeal is that the circuit court's instructions misstated the law and misled the jury. The trial court has broad discretion when instructing a jury. *White v. Leeder*, 149 Wis. 2d 948, 954, 440 N.W.2d 557 (1989). A challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial. *Lutz v. Shelby Mut. Ins.*

849

*Co.,* 70 Wis. 2d 743, 750-51, 235 N.W.2d 426 (1975). An error is prejudicial if it probably and not merely possibly misled the jury. *Id.* If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist. *White,* 149 Wis. 2d at 954-55; *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982). We conclude that the overall meaning communicated by the instructions given in this case correctly stated the law of causation.

The jury in this case was instructed:

> The cause questions ask whether there was a causal connection between the negligence of any person and the injury. These questions do not ask about "the cause," but rather "a cause." The reason for this is that there may be more than one cause of an injury. The negligence of one person may cause an injury or the combined negligence of two or more persons may cause it. Before you find that a person's negligence was a cause of the injury, you must find that his negligence was a substantial factor in producing the injury.

> The negligence of one person alone may produce injury, or the acts or omissions on the part of two or more persons, or other conditions beyond anyone's control may jointly produce the injury. Before the relationship of cause and effect can be found to exist, it must appear that the negligence of one or more of the physicians, Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat, if found by you, was a substantial factor in producing the resulting condition; that is to say, it was a factor actually operating and which had the substantial effect in producing the condition as a natural result.

> The evidence indicates without dispute that when Cynthia Fischer was first seen by Badri Ganju, Marvin Jumes, Mark Sharon and Michael Jacquat and

placed herself under their care, she was then suffering from an inflammatory bowel disorder. Her physical condition at that time cannot be regarded by you in any way as having been caused or contributed to by any negligence on the part of Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat. Questions 1, 3, 5 and 7 ask you to determine whether the condition of Cynthia Fischer's health, as it was when she placed herself under each doctors' care, has been aggravated or further impaired as a natural result of Badri Ganju's, Marvin Jumes's, Mark Sharon's or Michael Jacquat's treatment of her.

If you believe from the evidence that the present condition of Cynthia Fischer's health may have been caused by the negligent treatment of either Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat or by the processes and developments of Cynthia Fischer's prior physical condition, then you may not find the negligence of Badri Ganju, Marvin Jumes, Mark Sharon and/or Michael Jacquat was a cause of Cynthia Fischer's condition unless you are able to conclude that the negligence was a substantial factor in producing the injury.

It will, therefore, be necessary for you to distinguish and separate, first, the natural results and damage that flow from Cynthia Fischer's original physical condition and, second, those that flow from Badri Ganju's, Marvin Jumes's, Mark Sharon's and/or Michael Jacquat's treatment and allow Cynthia Fischer only such damages as you are satisfied to a reasonable certainty, from the greater weight of the credible evidence, naturally resulted from the treatment by Badri Ganju, Marvin Jumes, Mark Sharon or Michael Jacquat.

The first paragraph is the standard cause instruction of Wis. J.I.—Civil 1500. Plaintiffs do not challenge

this paragraph. The second paragraph accurately explains that various negligent acts and underlying conditions may jointly produce an injury, and that the proper question is whether the defendants' negligence was a "substantial factor" in producing Mrs. Fischer's harm. The third paragraph explains that the defendants cannot be held to have caused Mrs. Fischer's pre-existing condition, but that their negligence may be found to have aggravated or further impaired her health.[3]

The fourth paragraph is the only possibly confusing or misleading paragraph. Plaintiffs argue that this paragraph creates an improper choice for the jury—either the defendants' negligence or the pre-existing condition caused the injury, and precludes a finding of joint causation. While we agree that the first part of this paragraph implies that Mrs. Fischer's may have been caused *either* by the defendants' negligence *or* by the natural processes of the disease, when read as a whole and in conjunction with the preceding three paragraphs, the fourth paragraph did not preclude a finding of joint causation.

The first three paragraphs clearly establish that the combined negligence of one or more persons and other conditions beyond anyone's control, including the plaintiff's pre-existing condition, may jointly cause an injury. The final phrase of the fourth paragraph stated that the jury could find that the defendants' negligence was a cause of the injuries if "the negligence was a substantial factor in producing the injury." As discussed below at

[3]The plaintiffs raise various objections to paragraphs two and three, none of which have merit. For example, plaintiffs assert that the use of the term "produce" rather than "cause" in the second paragraph was confusing. The use of a common synonym is not confusing.

857, this is the proper test for causation. We conclude that to the extent that the either/or language of the fourth paragraph was less than completely accurate, it was not prejudicial and in light of the instructions as a whole does not reasonably lead to the conclusion that the jury was probably misled.

In the context of the fourth paragraph, the plaintiffs also direct the court's attention to *Young v. The Professionals Ins. Co.,* 154 Wis. 2d 742, 454 N.W.2d 24 (Ct. App. 1990), where the court of appeals held that a similar paragraph misstated the law and that the error was not overcome by the preceding cause paragraphs. In *Young,* the jury was instructed in part:

> If you believe from the evidence that Linda [Young's] present condition of health may have been caused by either Dr. Vogel's negligence in treatment or by the processes and developments of her prior condition of health, and if you are uncertain as to which cause was responsible, then you may not find that Dr. Vogel's negligence was a cause of Linda Young's present state of health.

*Young,* 154 Wis. 2d at 747. This paragraph quite clearly and erroneously precluded a finding of joint causation, and the court of appeals correctly held that the jury was probably misled. The instruction in this case, however, is significantly different.

In 1989, the above portion of Wis. J.I.—Civil 1023 was revised. The revised instruction removed the language regarding whether the jury was "uncertain as to which cause was responsible," and added that the defendant's negligence could be a cause if it was a substantial factor in causing the injury. *See Young,* 154 Wis. 2d at 749–50 n.2. The circuit court in this case used the

revised instruction. The deletion of the phrase "which cause was responsible" and the addition of the substantial factor language removes the mandatory either/or determination required of the jury in *Young.*

■

In *Young,* the court of appeals noted that nothing in the instruction informed the jury that "one person's negligence and a condition beyond anyone's control may jointly produce an injury." *Young,* 154 Wis. 2d at 750. The first sentence of the second instruction paragraph in this case expressly states: "The negligence of one person alone may produce injury, or the acts or omissions on the part of two or more persons, or other conditions beyond anyone's control may jointly produce the injury." Thus, when read in conjunction with the entire causation instruction, the fourth paragraph is not misleading.

■

The fifth and final paragraph of the instructions given in this case is a damages instruction, and plaintiffs do not contend that it is erroneous with respect to the causation question. The plaintiffs do however argue that it exacerbates the confusion of the fourth paragraph because it instructs the jury to separate the damages flowing from the defendant's negligence and the damages flowing from Mrs. Fischer's original physical condition. In light of the first three paragraphs explaining that there can be joint causes of an injury, this damages instruction is not confusing.[4]

---

[4]Plaintiffs also argue that the damages instruction erroneously required the jury to separate damages where there are joint causes producing a single injury. The plaintiffs cite *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.,* 121 Wis. 2d 338, 360 N.W.2d 2 (1984), wherein this court held that in a products liability action involving more than one tortfeasor, the plaintiff need not prove what portion of indivisible harm is attributable solely to the man-

■ The plaintiffs next argue that the circuit court erred by refusing to give the plaintiffs' requested cause instruction. It did not. As the defendants note, trial courts are not required to give requested instructions where the court's instructions adequately address the issue, even if the requested instruction is fair and adequate. *Robinson v. State,* 100 Wis. 2d 152, 165-66, 301 N.W.2d 429 (1981). As stated above, the circuit court's instructions adequately addressed the causation issue.

■ Moreover, at least a part of the plaintiffs' proposed instruction was inappropriate. The proposed instruction provided in part:

> You have heard evidence that when Cynthia Fischer was first seen by the defendants, she was suffering from an inflammatory bowel disorder. While her physical condition at that time cannot be regarded by you as having been caused or contributed to by any negligence on the part of the defendants, you have also heard evidence that *individuals with such a condition as Mrs. Fischer suffered upon her admission to the hospital, with proper medical care and management do not sustain the outcome that Mrs. Fischer sustained.* [Emphasis added.]

The highlighted portion, as we view the record, is simply not accurate. One of the plaintiffs' own experts testified that properly treated patients in Mrs. Fischer's condition have died. Nothing in the record indicates that

---

ufacturer. Plaintiffs contend that the reasoning of *Sumnicht* applies to this case and that the jury cannot be instructed to separate damages jointly caused by a defendant's negligence and a plaintiff's pre-existing condition. Because we affirm the circuit court's judgment that the defendants were not causally negligent, we do not address this issue.

proper treatment would absolutely have prevented the injury.

Additionally, the plaintiffs proposed instruction phrased the causation question as whether the "increased risk [of harm] was a substantial factor in causing Cynthia Fischer's ultimate harm . . .." This is not the issue. The issue is whether the defendants' negligence was a substantial factor in causing the harm. *Ehlinger II* clearly held that the question of increased risk merely helps the plaintiff meet his or her burden of production, and that once that burden is met, it is up to "the trier of fact to determine whether the alleged negligence was a substantial factor in causing the harm." *Ehlinger II,* 155 Wis. 2d at 20.[5]

The plaintiffs' primary argument on this appeal is that *Ehlinger II* substantively changed the law of causation in medical malpractice actions involving a negligent misdiagnosis or omission of treatment, and thus that a

---

[5]The plaintiffs correctly note that where inconsistent theories of causation exist, it is error not to instruct on all theories. *Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.,* 26 Wis. 2d 292, 305, 132 N.W.2d 510 (1965), *appeal after remand,* 35 Wis. 2d 517, 151 N.W.2d 113 (1967), *cert. denied,* 389 U.S. 1043 (1968). The plaintiffs assert that it was error for the circuit court to refuse to instruct the jury regarding an "increased risk" theory of recovery based upon *Ehlinger I,* which held that the causation question in negligent misdiagnosis cases was whether the increased risk of harm was a substantial factor in producing the harm. *Ehlinger I,* 148 Wis. 2d at 265–68. Because this court in *Ehlinger II* expressly abandoned the notion of an independent increased risk theory of causation and instead held that the test was whether the defendants' negligence was a substantial factor in producing the harm—the core of the instructions submitted by the defendants and given to the jury in this case—the plaintiffs' argument on this point is moot.

new trial is required in the interest of justice. *See* sec. 751.06, Stats.; *Vollmer v. Luety,* 156 Wis. 2d 1, 456 N.W.2d 797 (1990). *Ehlinger II* did not substantively change the law of causation and therefore a new trial is not required.

Causation in Wisconsin exists where the defendant's negligence was a substantial factor in producing the plaintiff's harm. *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.,* 84 Wis. 2d 455, 458, 267 N.W.2d 652 (1978). Substantial factor "denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 617-18, 292 N.W.2d 630 (1980). *Ehlinger II* expressly affirmed the substantial factor test. *Ehlinger II,* 155 Wis. 2d at 12-13.

A plaintiff in a negligence action carries a twofold burden of proving causation. First, the plaintiff has the burden of producing evidence, satisfactory to the judge, from which a jury could reasonably find a causal nexus between the negligent act and the resulting injury. If the plaintiff fails to meet this burden, the plaintiff has failed to establish a prima facie issue of causation and the defendant is entitled to a directed verdict. Second, if the plaintiff meets the burden of production and the causation question is submitted to the jury, the plaintiff has the burden of persuading the jury that the negligence in fact caused the injuries.

*Ehlinger II* involved the plaintiff's initial burden of production in a negligent misdiagnosis or omission case. Looked at another way, *Ehlinger II* involved the standard for sufficiency of evidence, which is a question of

law for the court. Prior to *Ehlinger II,* a plaintiff was generally required to produce some evidence that the defendant's negligence more probably than not caused the injury. In *Ehlinger II,* the defendant doctor failed to diagnose Mrs. Ehlinger's multiple pregnancy, and as a result failed to prescribe measures which could have prevented premature delivery. As a result of the premature delivery, the children suffered severe injuries. At the close of the evidence, the circuit court granted the defendant's motion to dismiss the action because the court concluded that the Ehlingers failed to produce any evidence that absent the defendant's negligence the injuries more probably than not would have been lessened or avoided.

On review, this court recognized that application of the ordinary burden of production in negligent misdiagnosis or omission cases produced harsh results because it required plaintiffs to prove as more probable than not a fact that was often unprovable—whether the omitted treatment would have prevented the harm. We held that where the defendant's negligence involves omitted treatment, the plaintiff need only produce evidence that the omitted treatment was intended to prevent the type of harm which resulted, that the plaintiff would have submitted to the treatment, and that it is more probable than not that the omitted treatment could have lessened or avoided the harm. At this point, a prima facie issue of causation exists and the question must be submitted to the trier of fact, which then must decide whether the plaintiff met its burden of persuasion that the negligence was a substantial factor in producing the injury.

Specifically, we held in *Ehlinger II:*

> [W]here the causal relationship between the defendant's alleged negligence and the plaintiff's harm can

only be inferred by surmising as to what the plaintiff's condition would have been had the defendant exercised ordinary care, *to satisfy his or her burden of production on causation,* the plaintiff need only show that the omitted treatment was intended to prevent the very type of harm which resulted, that the plaintiff would have submitted to the treatment, and that it is more probable than not the treatment *could* have lessened or avoided the plaintiff's injury had it been rendered. *It then is for the trier of fact to determine whether the defendant's negligence was a substantial factor in causing the plaintiff's harm.*

*Ehlinger II,* 155 Wis. 2d at 13–14 (emphasis added). This rationale leaves the plaintiff's burden of persuasion on the issue of causation unchanged. As explained by one commentary:

> The concept of the production burden is addressed to the court's function, not the jury's. It is simply a device whereby the court determines whether, if the trial were stopped at any given point, it would send the case to the jury. If not, the court decides the case and the jury has no role to play. If the case is sent to the jury, the production burden drops out of the case and has no role to play. The jury will be concerned only with the persuasion burden.

Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* § 7.7, at 320–21 (3rd ed. 1985). *See also Reinke v. Personnel Bd.,* 53 Wis. 2d 123, 133, 191 N.W.2d 833 (1971); *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 86–87, 253 N.W.2d 526 (1977); and *McKellips v. St. Francis Hosp., Inc.,* 741 P.2d 467, 471 (Okla. 1987). *Ehlinger II* merely held that the plaintiff's threshold burden of production is met by satisfying a three element test; at this point, the causation question must be presented to the

trier of fact. Once the causation question is presented to the trier of fact, the substantial factor test applies.

In this case, there was no question that the plaintiffs met their burden of production. The issue of causation was presented to the jury, and, as stated above, the jury was instructed correctly regarding the substantial factor test.

The plaintiffs also note that after *Ehlinger II,* Wis. J.I.—Civil 1023.4 was created. The plaintiffs argue that this is further evidence that *Ehlinger II* substantively changed the law of causation in negligent misdiagnosis or omission cases. This new instruction, adapted to the facts of this case, provides in part:

> In this case, plaintiff claims that the doctor was negligent in failing to diagnose and treat her. To establish that the doctor's negligence was a cause of plaintiff's injury, plaintiff must first prove that the omitted treatment was intended to prevent the type of harm which resulted, that plaintiff would have submitted to the treatment, and that the treatment could have lessened or avoided plaintiff's injury had it been rendered.
>
> If you are satisfied that plaintiff has proved these three facts, you must then determine whether the doctor's negligence was a substantial factor in causing plaintiff's injury. In making this determination, the fact that plaintiff has introduced evidence to the effect that the omitted treatment could have lessened or avoided plaintiff's injury does not prevent you from considering other evidence in the case tending to show that the plaintiff would have sustained the same injury even if a proper diagnosis had been made and preventive treatment had been rendered.

The Wisconsin Civil Jury Instructions Committee for the Wisconsin Judicial Conference in creating 1023.4 misinterpreted *Ehlinger II*.

The first paragraph of 1023.4 is the test for the plaintiff's burden of production, which is a question for the court, not the trier of fact.[6] In *Ehlinger II*, the circuit court dismissed the plaintiff's action for insufficiency of the evidence. The three part test created by *Ehlinger II* allows plaintiffs in negligent misdiagnosis and omission cases more easily to survive motions to dismiss for insufficiency of the evidence, and has nothing to do with the plaintiff's ultimate burden of persuasion regarding causation. It is merely the minimal quantum of evidence which must be produced from which a jury reasonably could infer that the negligence was a substantial factor in producing the injury. As stated by the Supreme Court of Oklahoma in a negligent misdiagnosis case:

> [W]e emphasize the new standard of sufficiency of proof adopted by our pronouncement lowers a plaintiff's burden of production to enable him/her to more easily establish a jury question on the issue of causation on a showing of substantial decrease in the chance of survival, rather than a judge directing a verdict or dismissing for failure to make a case for causation. In effect, the lowered standard merely reallocates the power to decide the causation issue, giving the jury a greater role in the decision making process. Once the case reaches the jury, however, the

---

[6]Moreover, the instruction misstates the *Ehlinger II* burden of production. A plaintiff need not "prove" the three elements set forth in *Ehlinger II* in order to present the causation issue to the jury; rather, the plaintiff must only furnish evidence of these three elements to satisfy his or her burden of production.

> plaintiff still has the burden of persuading the jury by a preponderance of the evidence.

*McKellips,* 741 P.2d at 475. Once some evidence of each *Ehlinger II* factor is produced to the satisfaction of the court, the question is for the fact finder and is simply whether the defendant's negligence was a substantial factor in producing the injuries.

The second paragraph of 1023.4 correctly sets forth the substantial factor test, but in substance this formulation is no different than the substantial factor test set forth in Wis. J.I.—Civil 1023 and presented to the jury in this case.

Because *Ehlinger II* did not substantively change the substantial factor test for causation in medical malpractice actions, and because the instructions given in this case accurately set forth the substantial factor test, the cause issue was fully tried.

*By the Court.*—The judgment of the circuit court is affirmed.