Bobbie WALTER and Kevin Walter,
Plaintiffs–Appellees,

v.

Irwin J. BRUHN, M.D., Dale G. Jacobson, M.D., and Wisconsin Patient's Compensation Fund, Defendants–Appellants.

No. 01–2260, 01–2261.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 2002.

Decided July 1, 2002.

Before WOOD, Jr., RIPPLE, and ROVNER, Circuit Judge.

## ORDER

Bobbie Walter and her husband, Kevin Walter, brought this action for medical malpractice against Dr. Irwin Bruhn and Dr. Dale Jacobson. The Walters alleged that the physicians had failed to diagnose Mrs. Walter's breast cancer at an early stage and, consequently, the disease subsequently became much more life threatening and required much more invasive medical procedures. A jury rendered a verdict in favor of the Walters, and the district court entered judgment on that verdict. The physicians now appeal and challenge the sufficiency of the evidence with respect to the element of causation. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

### I

### BACKGROUND

A. Facts

Bobbie Walter noticed a small lump in her right breast in June 1994. The next

day, she made an appointment to see Dr. Bruhn. Dr. Bruhn saw Mrs. Walter a few days later and ordered a mamogram; the report of this test was negative for abnormalities. Dr. Bruhn did not order a biopsy even though the mamogram report cautioned that a negative report should not delay a biopsy because mamograms fail to identify tumors eight to ten percent of the time.

The lump grew larger over the next several months. Mrs. Walter then saw Dr. Jacobson several times between July 1994 and June 1995, specifically discussing the mass in her breast in November 1994 and June 1995. Dr. Jacobson noted the presence of the lump and that it would swell periodically, but he took no action. In November 1996, Mrs. Walter had a mamogram performed on her own initiative and had the report sent to Dr. Jacobson. The mamogram came back negative for irregularities, but contained a caveat similar to the one in the mamogram report of 1994. Dr. Jacobson never ordered a biopsy.

In April 1997, Mrs. Walter switched primary care physicians and saw Dr. Luecking who ordered a biopsy of the breast lump. The biopsy revealed that the lump was cancerous, and a mastectomy was performed soon thereafter. Of the four stages of cancer, stage I being the earliest and least threatening and stage IV being the latest and most threatening, an analysis of the cancerous tissue removed during the mastectomy determined that Mrs. Walter had stage IIIB breast cancer, one step removed from stage IV. It was further determined that the cancer had spread to seventeen of Mrs. Walter's lymph nodes. In addition to the mastectomy, Mrs. Walter was required to undergo chemotherapy, radiation treatment and reconstructive surgery.

Mrs. Walter then brought this diversity action against Dr. Bruhn and Dr. Jacobson

for malpractice. At trial, Mrs. Walter presented the testimony of two expert witnesses, both physicians, to establish causation. The experts testified that early diagnosis and treatment of breast cancer was essential to its successful treatment. They also testified that, because of the delay in diagnosis, there is a greater likelihood that Mrs. Walter's cancer will recur and that she will die as a result. They further testified that, had the cancer been diagnosed in 1994 or 1995, a mastectomy in all likelihood could have been avoided, and a lumpectomy or partial mastectomy could have been performed instead.

### B. District Court Proceedings

Drs. Bruhn and Jacobson moved for judgment as a matter of law at the close of all the evidence. The district court deferred its ruling. The jury returned a verdict for Mrs. Walter, and the district court entered judgment on the verdict. Following the entry of judgment against them, Drs. Bruhn and Jacobson again moved for judgment as a matter of law and challenged the sufficiency of the evidence. The court denied the motions; it ruled that the evidence was sufficient to support the jury's verdict.

## II

### DISCUSSION

Drs. Bruhn and Jacobson do not contest their negligence, but they do submit that it has not been established that their negligence caused Mrs. Walter's injuries. "To establish causation in Wisconsin, the plaintiff bears the burden of proving that the defendant's negligence was a substantial factor in causing the plaintiff's harm." *Ehlinger v. Sipes,* (*Ehlinger II*), 155 Wis.2d 1, 454 N.W.2d 754, 758 (Wis.1990); *see Fischer v. Ganju,* 168 Wis.2d 834, 485 N.W.2d 10, 13 (Wis.1992).

## A.

█ The parties disagree about whether a federal court should apply state or federal standards when evaluating the sufficiency of the evidence. Although courts in this circuit formerly applied state standards to the determination of mid-trial and post-trial motions regarding the sufficiency of the evidence, we have since " 'adopt[ed] the federal reasonable-person standard across the board: pre-trial, mid-trial, post-trial, and on appeal, for evaluating both the merits and the quantum of relief,' in diversity as well as federal question cases." *To–Am Equip. Co., Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 664 (7th Cir.1998) (quoting *Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 335 (7th Cir.1994)).[1] Therefore, we apply federal standards in evaluating the sufficiency of the evidence here to support the jury's finding that the physicians' negligence was a substantial factor in causing Mrs. Walter's harm. Under the Federal Rules of Civil Procedure, judgment as a matter of a law is appropriate on a particular issue if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue." Fed. R.Civ.P. 50(a). "Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001) (citations and internal quotation marks omitted).

█ Thus, this court must determine whether, based on the evidence in the record, a reasonable person could find that the physician's failure to diagnose the breast cancer was a substantial factor in causing Mrs. Walter's harm. "Substantial factor denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Fischer*, 485 N.W.2d at 19 (internal quotation marks omitted). In determining whether the negligence was a substantial factor in causing the patient's harm, "[t]he trier of fact may consider evidence of the likelihood of success of proper treatment . . . ." *Ehlinger II*, 454 N.W.2d at 763. If the harm "would have occurred irrespective of the negligence," the trier of fact may conclude that the negligence was not a substantial factor. *Id.* On the other hand, "by showing that the omitted treatment was intended to prevent the very harm which resulted, that the plaintiff would have submitted to the treatment, and that the treatment *could* have lessened or avoided the harm, the plaintiff establishes a sufficient nexus between the alleged negligence and harm to allow the trier of fact to determine whether the alleged negligence was a substantial factor in causing the harm." *Id.* at 762 (emphasis in original).

## B.

Two physicians who Mrs. Walter called as expert witnesses testified that the early diagnosis of breast cancer and the early removal of a tumor were important factors in decreasing the likelihood of a spread and recurrence of the cancer. One of the expert witnesses, Dr. Marvin Corlette, testified that, by the time of its removal, the tumor had grown to a size that was "rare" because such growths are usually found

---

1. As the court noted in *To–Am*, there is language in some cases since *Mayer* suggesting that the court in those cases applied a state standard, but those cases appear to have overlooked this court's decision in *Mayer*, which changed the law of the circuit in that regard. *See To–Am Equip.*, 152 F.3d at 664–65.

sooner. R.143 at 121. He also testified that there was a "small possibility" that by June 1994, when Mrs. Walter first saw Dr. Bruhn, the cancer already had spread to Mrs. Walter's lymph nodes, R.143 at 166, and that even in 1995, it was unlikely that all seventeen of the lymph nodes eventually affected would have been cancerous. Dr. Corlette also testified that, if the cancer had been diagnosed in 1994 or early 1995, it is possible that only a lumpectomy or a partial mastectomy would have been required instead of the full mastectomy. He testified that if the cancer had been discovered in 1994, it was possible, though not likely, that chemotherapy would have been needed. Mrs. Walter, therefore, may well have been saved the pain and suffering caused by such treatment if the cancer had been discovered in 1994. Dr. Corlette also testified that discovery and treatment of the cancer in late 1994 or early 1995 "would have been beneficial in preventing the spread." R.143 at 207.

Dr. Thomas Cosgriff, also an expert witness of Mrs. Walter, also testified that, given the present state of medical knowledge, early detection of breast cancer is important in terms of available treatment options. He further testified that, in Ms. Walter's case, the likelihood that the breast cancer was a stage I tumor in 1994—and thus easier to treat and with a small likelihood of spread and recurrence—was "pretty good." R.144 at 383. He further testified the likelihood that the tumor was a stage III tumor, as it was when it was finally diagnosed in 1997, "would be much less." R.144 at 382–83. Finally, Dr. Cosgriff testified that the delay in diagnosing Mrs. Walter's cancer substantially increased the risk of a recurrence and the risk that Mrs. Walter would die as a result. *See* R.144 at 389–90.

In sum, there was evidence at trial that, in the vast majority of cases, discovery of a tumor at an early stage of its development enhances immeasurably the patient's treatment options, improves dramatically the opportunity to check the disease and alters very significant the long-term prognosis, including the chances of surviving the illness. The testimony also established that Mrs. Walter's tumor, although quite small when she first detected it, was very large when it was finally removed two and a half years later. There was also testimony that a delay of that length is sufficiently long to make a significant difference in treatment options and in prognosis. Upon a thorough examination of the evidence at trial, we do not believe that the testimony of the medical experts who testified on behalf of Mrs. Walter can be characterized fairly as based on, as the defendants suggest, "mere possibilities." *See* Appellant's Br. at 17.

Although there was other testimony at trial that was not favorable to Mrs. Walter's position, including testimony that even small tumors can on occasion present significant threats, we must conclude that Mrs. Walter presented sufficient evidence to permit a reasonable jury to conclude that, with timely diagnosis of her cancer, her treatment options and prognosis would have been substantially more favorable, and that she suffered substantial injury because of the negligence of the defendant physicians. "The trier of fact may consider evidence of the likelihood of success of proper treatment in determining whether the negligence was a substantial factor in causing the harm . . . ." *Ehlinger II*, 454 N.W.2d at 763. Consequently, a reasonable juror, properly instructed as this jury was, could conclude that the negligence of Dr. Bruhn and Dr. Jacobson was a substantial factor in causing Mrs. Walter's harm. The district court did not err in denying the motion for judgment as a matter of law.

248

## Conclusion

Sufficient evidence supports the jury's finding that the defendants' negligence caused Mrs. Walter's harm. We therefore affirm the judgment of the district court.

AFFIRMED