Jo-El HANSON, Plaintiff-Appellant,

HUMANA/EMPLOYERS HEALTH INSURANCE COMPANY,
Subrogated-Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Kevin L. Caldwell and Lindell Motorsports, Inc.,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2004AP2065. Oral argument April 25, 2006.
—Decided July 12, 2006.*

2006 WI 97

(Also reported in 716 N.W.2d 866.)

149

For the defendants-respondents-petitioners, there were briefs by *Randy S. Parlee* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Randy S. Parlee.*

For the plaintiff-appellant, there was a brief by *Michael I. Tarnoff, Ted M. Warshafsky, Frank T. Crivello II,* and *Warshafsky, Rotter, Tarnoff & Bloch, S.C.,* Milwaukee, and oral argument by *Michael I. Tarnoff.*

An amicus curiae brief was filed by *Robert L. Jaskulski* and *Habush, Habush & Rottier, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. JON P. WILCOX, J. The defendants, American Family Mutual Insurance Company (American Family), Kevin L. Caldwell (Caldwell), and Lindell Motorsports, Inc. (Lindell) (collectively, the defendants), seek review of an unpublished decision of the court of appeals,[1] which reversed an order of the Milwaukee County Circuit Court, Michael D. Guolee, Judge, denying Jo-El Hanson's (Hanson) motion to change the verdict and increasing her award for past medical expenses from $25,000 to $78,338.97, as well as awarding her a new trial on the remaining damages.

¶ 2. We are presented with two issues on review. First, is Hanson entitled to her expenses for a surgery, admittedly well-done, but allegedly not necessitated by her injury, just as a plaintiff is entitled to her expenses when surgery necessitated by the injury was negligently performed and aggravates the injury? Second, was the circuit court's own customized instruction on damages and causation appropriate in this case?

¶ 3. We hold that because the jury concluded that Hanson was injured in the accident, she was entitled to all of her past medical expenses, regardless of whether Hanson's treating physician performed an unnecessary surgery, under the rule first enunciated in *Selleck v. Janesville,* 100 Wis. 157, 75 N.W. 975 (1898), as Hanson used ordinary care in selecting her doctor. Furthermore, we hold the jury's verdict arose from an erroneous and confusing jury instruction such that there is a

---

[1] *See Hanson v. Am. Family Mut. Ins. Co.,* No. 2004AP2065, unpublished slip op. (Wis. Ct. App. Nov. 8, 2005).

reasonable probability of a different outcome on the remaining damages at issue. As such, the decision of the court of appeals is affirmed.

I

¶ 4. On June 22, 2000, Hanson was driving to work when she encountered heavy traffic. She began to slow down and her car was hit in the back by a truck driven by Caldwell. The truck was owned by Lindell and insured by American Family. Caldwell was traveling approximately five to seven miles per hour at the time of the accident. It is undisputed that Caldwell was fully responsible for causing the accident.

¶ 5. The following day, Hanson developed lower back, neck, and rib pain. Hanson saw her family physician, Dr. Kenneth Saydel, that same day. She began going to physical therapy. According to Hanson's trial testimony, the rib pain went away after six to eight months, the lower back pain went away after four to six months, but the neck pain remained. In July of 2000, she was diagnosed with post-traumatic cervical dorsal strain, not improving. Then in August of 2000 she was diagnosed with acute denervation activities of the lower cervical vertebrae (based on an electromyogram (EMG) performed by Dr. Lynn Ma); post-traumatic cervical dorsal strain, not improving with radiculopathy; and cervical thoracic spasm with cervical radiculopathy (based on the findings of an orthopedic surgeon). In November, another EMG performed by Dr. Ma revealed evidence of acute mild right C5–C6 radiculopathy. Hanson was referred to a neurosurgeon, Dr. James Lloyd, who determined that the C4, C5, and C6 disks were causing the pain in Hanson's neck. He recommended surgery and performed it on February 6, 2001, removing the disks specified and replacing them with bone graph material (metal plate squares).

153

¶ 6. Hanson filed a lawsuit against the defendants on August 13, 2001. The case proceeded to trial, where the liability of the defendants was contested. The two issues before the court were whether Hanson was injured in the accident and, if injuries existed, the extent of those injuries. The defendants argued that Hanson's surgery was unnecessary. In support of this assertion, the defendants' expert, a neurosurgeon, Dr. Ronald Pawl, responded "no" when asked if Hanson's surgery was caused by the accident and stated, "I do not feel [the surgery] was [medically] necessary." He also raised the possibility that the surgery was an act of malpractice in cross-examination. In responding to plaintiff's counsel, Dr. Pawl stated that surgery which is clearly not indicated "can be malpractice, but it is not necessarily malpractice." In further response to whether he thought Dr. Lloyd was incompetent in his diagnosis that led him to do the surgery, Dr. Pawl responded, "Yes, I clearly disagree with that, yes."

¶ 7. However, Dr. Pawl also agreed that Hanson initially went to the doctor as a direct consequence of the accident, and that she acted appropriately in following her doctor's recommendation to undergo surgery. Hanson stressed the existence of a causal nexus between the accident and the treatment received, relying on the testimony of Dr. Lloyd. He testified that the surgery was "necessary" and the structural damage to her spine was caused by the accident. According to the plaintiff, this connection, along with the fact that Hanson acted appropriately in finding a doctor and following his instructions, prevented any decrease in the damages awarded as a result of any mistakes in the medical treatment of Hanson.

¶ 8. Prior to jury deliberation, Hanson moved for a directed verdict on the issue of past medical expenses.

The circuit court denied the motion. Hanson also requested a special instruction that she be awarded all of her past medical expenses and related damages, even if the jury concluded that some of her damages were a result of her doctor's malpractice from the unnecessary surgery. The circuit court refused to give this instruction.

¶ 9. At the instruction conference, Hanson also submitted a modified version of Wis JI—Civil 1710. The circuit court, however, refused to give this instruction to the jury. It instead gave its own instruction, which was a combination of Wis JI—Civil 1710 (aggravation of injury because of medical negligence), Wis JI—Civil 1500 (cause), and the court's own additional language added from the bench.

¶ 10. The jury made the following award: (1) past medical expenses: $25,000; (2) past loss of earning capacity: $7,250; (3) future medical expenses: $0; (4) past pain, suffering, disability: $15,000; and (5) future pain, suffering, disability: $0. The $25,000 awarded for past medical expenses was approximately the amount of Hanson's medical expenses that were charged after the accident but before the surgery.

¶ 11. Following the verdict, Hanson filed a post-verdict motion requesting the following: (1) an award of all past medical expenses totaling $79,123.97; (2) an award of past loss of earning capacity totaling $14,500; and (3) a "fair and reasonable" increase in the award for past pain, suffering and disability. As one alternative, Hanson requested a new trial on those damages that were not increased, or an entire new trial in the interest of justice. As another alternative, Hanson asked the court to order a new trial on the grounds that the verdict was against the great weight and clear preponderance of the evidence. The trial court denied Hanson's motions in an order filed on April 12, 2004. Hanson subsequently appealed.

155

¶ 12. Hanson renewed her arguments before the court of appeals. The court of appeals agreed and reversed the circuit court's order, granting Hanson $78,338.97[2] in past medical expenses, instead of the $25,000 awarded by the jury. The court of appeals also granted Hanson a new trial on the issues of her past and future pain and suffering and loss of earning capacity, based on what it believed was an erroneous jury instruction.

¶ 13. The court of appeals ruled that the circuit court properly refused to affirm Hanson's pre-verdict motion to award all of her past medical expenses and related damages. The defendants expressed the possibility at trial that Hanson was not injured at all, in which case the jury could agree and not award Hanson any past medical expenses or other damages.

¶ 14. However, the court of appeals ruled that the circuit court mistakenly refused to grant Hanson's post-verdict motion to change the verdict answer to award her the full amount of her past medical expenses. The jury found that Hanson was injured in the accident (a fact that the defendants did not appeal) and granted her $25,000, the cost of her medical expenses prior to the surgery. Under *Lievrouw v. Roth,* 157 Wis. 2d 332, 459 N.W.2d 850 (Ct. App. 1990), the court of appeals held that Hanson was entitled to "all of her medical expenses related to her original injury, provided that she exercised good faith and due care in selecting her treating physician."[3] *Hanson v. Am. Family Mut. Ins.*

---

[2] Apparently, Hanson is not requesting $785.00 in chiropractic fees in her appeal.

[3] This rule originated in *Selleck v. Janesville,* 100 Wis. 157, 163, 75 N.W. 975 (1898). We note that the *Selleck* court used the term "ordinary care" when referring to the level of care that a

*Co.*, No. 2004AP2065, unpublished slip op., ¶ 21 (Wis. Ct. App. Nov. 8, 2005). The defendants' expert, Dr. Pawl, stipulated that Hanson exercised good faith and due care in selecting her physician. Therefore, the court of appeals reversed the circuit court's order denying Hanson's post-verdict motion to change the verdict answer and remanded with directions to enter judgment for Hanson, awarding her the full amount of past medical expenses.

¶ 15. The court of appeals also concluded that the circuit court's jury instructions misstated current law. The special instruction ordered the jury not to consider any alleged malpractice, while at the same time telling the jury "it must find that all treatments were related to the accident." *Id.*, ¶ 25. "In effect, the trial court told the jury that regardless of whether the surgery was unnecessary, they could not award the cost of the surgery unless the jury 'relate[d] them to the accident, those injuries.'" *Id.* In the court of appeals' view, this instruction directly contradicted established law in Wisconsin, as detailed in such cases as *Lievrouw* and *Fouse v. Persons*, 80 Wis. 2d 390, 259 N.W.2d 92 (1977).

¶ 16. Finally, the court of appeals concluded that there was a reasonable probability that the error in the jury instruction contributed to the outcome of the case. In other words, the erroneous instruction was sufficient to undermine confidence in the case's outcome. According to the court of appeals, "the inconsistent and

plaintiff must exercise in selecting his or her physician. In *Fouse v. Persons*, 80 Wis. 2d 390, 397–98, 259 N.W.2d 92 (1977), we used the term "good faith and due care" when referring to the necessary level of care under *Selleck*. The terms "ordinary care" and "good faith and due care" are used synonymously, but for the sake of consistency, we use the term "ordinary care" in this opinion.

157

erroneous instructions in this case probably caused jury confusion and probably affected the substantial rights of Hanson with respect to the damage questions in the special verdict." *Hanson,* No. 2004AP2065, ¶ 31. For these reasons, the court of appeals remanded for a new trial on the remaining damages issues.

¶ 17. The defendants then filed a petition for review in this court, which we accepted.

## II

■

¶ 18. When reviewing a trial court's denial of a motion to change a jury's special verdict "[i]f there is 'any credible evidence which under any reasonable view supports the jury finding especially when the verdict has the approval of the trial court, it should not be disturbed.' " *Carl v. Spickler Enters., Ltd.,* 165 Wis. 2d 611, 625, 478 N.W.2d 48 (Ct. App. 1991) (quoting *Ostreng v. Lowrey,* 37 Wis. 2d 556, 560, 155 N.W.2d 558, 559 (1968)).

■

¶ 19. As to the allegedly erroneous jury instructions, such a challenge "warrants reversal and a new trial only if the error was prejudicial. An error is prejudicial if it probably and not merely possibly misled the jury." *Fischer v. Ganju,* 168 Wis. 2d 834, 849–50, 485 N.W.2d 10 (1992) (citing *Lutz v. Shelby Mut. Ins. Co.,* 70 Wis. 2d 743, 750–51, 235 N.W.2d 426 (1975)). "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Id.* at 850 (citing *White v. Leeder,* 149 Wis. 2d 948, 954–55, 440 N.W.2d 557 (1989); *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982)).

■

¶ 20. The *Selleck* rule has been a part of Wisconsin case law since 1898. This rule essentially states that when a tortfeasor causes an injury to another person who then undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery. *See Butzow v. Wausau Mem'l Hosp.,* 51 Wis. 2d 281, 285–86, 187 N.W.2d 349 (1971).[4]

¶ 21. In *Selleck,* 100 Wis. at 159, the plaintiff sustained injuries by reason of an allegedly defective sidewalk. The City contended that the circuit court erroneously gave the jury the following charge:

> "The plaintiff is not held responsible for the errors or mistakes of a physician or surgeon in treating an injury received by a defect in the street or sidewalk, providing she exercises ordinary care in procuring the services of such physician. Where one is injured by the negligence

---

[4] In *Butzow v. Wausau Memorial Hospital,* 51 Wis. 2d 281, 285–86, 187 N.W.2d 349 (1971), we cited to the Restatement (Second) of Torts § 457 (1965) in discussing the *principle that a tortfeasor is liable for the consequences of treatment that aggravates the original injury.* Section 457 is entitled "Additional Harm Resulting From Efforts to Mitigate Harm Caused by Negligence" and reads as follows:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

*Id.* at 286 (quoting Restatement (Second) of Torts § 457). As stated in *Butzow,* this doctrine was adopted by Wisconsin in *Selleck.*

of another, or by negligence of a town or city, if her damages have not been increased by her own subsequent want of ordinary care she will be entitled to recover in consequence of the wrong done, and the full extent of damage, although the physician that she employed omitted to employ the remedies most approved in similar cases, and by reason thereof the damage to the injured party was not diminished as much as it otherwise should have been."

*Id.* at 163 (list of cited cases omitted). The court concluded this charge was supported by authority as well as reason. The court further found " 'where personal injuries result proximately from negligence or other tort, the wrongdoer is liable for the damages actually sustained, although they are increased by a tendency to disease on the part of the person injured.' " *Id.* at 164 (quoting *McNamara v. Clintonville*, 62 Wis. 207, 22 N.W. 472 (1885)).

¶ 22. This court last cited the *Selleck* rule almost 30 years ago in *Fouse*. In that case, the plaintiff sought damages totaling $5,400, which included all medical and hospital expenses, including the surgery in question. *Fouse*, 80 Wis. 2d at 396. The defendant challenged the necessity of the surgery, the cost of which was included in the total. *Id.* at 397. The circuit court determined that even if the jury agreed with the defendant's theory, the damages should have been for $393—the amount of expenses incurred up to the surgery—and therefore the amount of $1,750 the jury actually awarded was perverse. *Id.* This court then stated the following:

[T]he fault in the award may go deeper. The theory of the defense is that some of the damages resulted from mistaken medical treatment. The rule for awarding damages for injuries aggravated by subsequent mis-

160

taken medical treatment was established in *Selleck v. Janesville* in 1898, and has been followed since. Assuming that the plaintiff exercised good faith and due care in the selection of his treating physician, an assumption borne out by the record in this case, under the *Selleck* rule the defendants are liable for the full amount of damages caused by the aggravation. However, the plaintiff did not request a jury instruction regarding the defendants' liability for damages aggravated by malpractice or mistake and has not challenged the instructions as given on appeal. We therefore confine our review to the fault found by the trial court. . . .

*Id.* at 397–98. The implication of this statement is clear: had the plaintiff requested a Wis JI—Civil 1710 instruction, as a matter of law he would have been entitled to the full $5,400 under *Selleck*. As noted by the court of appeals, this case is "eerily similar" to *Fouse*. We agree and conclude the *Selleck* rule should apply in this case as it did in *Fouse*.

¶ 23. The defendants argue that there is a difference between unnecessary medical treatment, as opposed to medical malpractice that causes aggravation of injuries. In this case, the defendants contend that there is no causal relationship between the accident and the surgery performed by Dr. Lloyd. Therefore, in the defendant's view, this case should not be subject to a Wis JI—Civil 1710 instruction, because such an instruction "is to be used in cases where there is at issue aggravation of damages because of subsequent negligent medical treatment of injuries sustained in the accident." Wis JI—Civil 1710 Comment. In support of its argument, the defendants point to the testimony of Dr. Pawl who found no spinal pathology causally related to the accident. Additionally, the defendants contend the jury verdict, which awarded solely pre-surgery past

medical expenses, demonstrates the jury concluded that the surgery was not causally related to the accident.

¶ 24. Contrary to the defendants' argument, the jury's award of pre-surgery past medical expenses demonstrates that it believed Hanson was injured in the accident, as there was no evidence presented at trial that she had any neck pain prior to the accident. Thus, the jury rejected the defendants' contention at trial that Hanson was not injured in the accident. Applying the *Selleck* rule to the jury's findings, Hanson was entitled to all of her past medical expenses, if she used ordinary care in selecting her physicians.

¶ 25. One of the defendants' main arguments at trial was that the accident was not causally related to the surgery. The important questions are whether the surgery arose from an initial injury that itself was caused by the accident and whether Hanson used ordinary care in selecting her physician. Here, the jury determined that Hanson was injured in the accident, and while seeking treatment with ordinary care she had an allegedly unnecessary surgery performed. These facts are sufficient to bring this case under the ambit of the *Selleck* rule.

¶ 26. The defendants also argued at trial that Hanson tends to exaggerate her injuries and has a demonstrated history of medical complaints with no organic cause. The jury rejected this theory and concluded that she did in fact suffer an injury in the accident. For purposes of the *Selleck* rule, it does not matter if Hanson is a person who is very focused on her physical pain, as long as Hanson used ordinary care in selecting Dr. Lloyd. In this case, there was no dispute that Hanson exercised ordinary care in selecting Dr. Lloyd.

¶ 27. Hanson was referred to Dr. Lloyd by her family doctor because an EMG showed evidence of an acute mild right C5–C6 radiculopathy. Dr. Ma determined that no surgery was indicated, but Dr. Lloyd disagreed. In Dr. Lloyd's opinion, this injury was caused by the automobile accident. Dr. Lloyd may have misdiagnosed those injuries, but they were the reason she was treated. Dr. Pawl even admitted as such. Because Hanson used ordinary care in selecting her physician and that physician subsequently performed an allegedly unnecessary surgery, although one still arising from the original injury caused by Caldwell, the defendants are responsible for the expense of the surgery, consistent with the *Selleck* rule.

¶ 28. As further support for this conclusion, we cite to *Honthaners Restaurants, Inc. v. Labor and Industry Review Commission,* 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660. In that case, Dawn Stanislowski (Stanislowski) injured her arm while working at a George Webb's Restaurant, owned by Honthaners Restaurants, Inc. (Honthaners). *Id.,* ¶ 3. Stanislowski was awarded temporary total disability and a payment of her accrued medical expenses for approximately a six-month time period. *Id.* Later, she sought additional disability benefits and payment for additional medical expenses. *Id.,* ¶ 4. The Labor and Industry Review Commission ordered Stanislowski's employer to pay temporary total disability and certain medical expenses for another 13 months. *Id.,* ¶ 7. On appeal, Honthaners argued Stanislowski was not entitled to additional benefits because her additional medical treatment and expenses were unnecessary and unreasonable. The court of appeals disagreed, and the order was affirmed.

¶ 29. The court noted that there were two conflicting medical opinions concerning the injury. *Id.,* ¶ 22. One doctor felt that Stanislowski needed prolonged treatment, while the other believed the injury had healed. *Id.* While we recognize there was no dispute between the parties that Stanislowski suffered an injury, she allegedly took a course of unnecessary treatment. *Id.* The court of appeals, however, decided she should still be compensated for her alleged additional medical treatment because she accepted the additional treatment in good faith. *Id.* Similarly, Hanson arguably underwent unnecessary treatment, and in our view, because the jury decided she was injured, she should likewise be compensated for her past medical expenses.

¶ 30. For all of the above reasons, we affirm the court of appeals as to this issue and conclude as a matter of law that Hanson is entitled to all of her past medical expenses.

## IV

¶ 31. We next turn to the disputed jury instruction. The court of appeals concluded that the circuit court's instruction on "Damages and Causation" was erroneous and confusing. This instruction created by the circuit court was based on Wis JI—Civil 1710 and Wis JI—Civil 1500. Although defense counsel argued that no aspect of Wis JI—Civil 1710 was necessary, counsel did believe the version was a correct statement of the law. The defendants argue that there was nothing wrong with the instruction, and if there is a problem, it lies with the fact that the trial court may have stated too much.

¶ 32. As read to the jury, the instruction was as follows:[5]

You must decide whether the defendant, Kevin L. Caldwell's, negligence caused the injury suffered by the plaintiff, Jo-El Hanson. The defendant's negligence caused the injury if it was a substantial factor in producing the injuries.

One of the issues in this case for you to decide is whether the medical procedures and treatments used by her treating doctors related to the injuries she received in the accident. Were the injuries treated by her doctors a part of the original injuries, and/or the natural and probable consequence of the defendant's negligence, and/or the normal incidence of medical care necessitated by the defendant's negligence.

If there is a causal connection between the accident and the treatment she received and her damages, your answer to the question on damages for her personal injuries should be for the entire amount of damages sustained and should not be decreased because a defense doctor questions the procedure used by the plaintiff's treating doctors. *I think that is a very important comment.*

*Now there's been talk here about malpractice law, and I've told you there is no issue of malpractice in this case. It is a difference of opinion as to whether or not the injuries were caused by the accident. It's a superfluous matter about one doctor talking about what another doctor should have done. It is improper in this case as far as I am concerned and should not be considered by you.* Any reduction should be—would be—any reduction would be contrary to long, established principles that a defendant who causes injury is responsible for

---

[5] The emphasized portions indicate the relevant deviations the circuit court made from its written instruction.

165

any aggravation that results from improper—the alleged improper medical treatment for that injury as long as the plaintiff has exercised good faith and due care in selecting the treating physicians.

The evidence in this case indicates that the plaintiff used ordinary care in selecting her treating doctors. *So what does this basically say? It says, she went to her doctor, the doctor used a procedure, the procedures were done and they followed. If you relate them to the accident, those injuries, she should receive the entire amount of damages she sustained for that, those procedures.*

¶ 33. The Comment to Wis JI—Civil 1710 reveals that the instruction is generally used in situations "where there is at issue the aggravation of damages because of subsequent negligent medical treatment of injuries sustained in the accident." Wis JI—Civil 1710 Comment.

¶ 34. This instruction conveys the "long-established principle that a defendant who causes injury is responsible for any aggravation that results from improper medical treatment, as long as the plaintiff has 'exercised good faith and due care' in selecting his or her treating physicians." *Lievrouw,* 157 Wis. 2d at 358.

¶ 35. In *Lievrouw,* an expert for the defense, in an action for personal injuries arising out of an automobile accident, testified that the plaintiff "would have had a better recovery if he had been treated earlier and differently by his physicians." *Id.* at 357. The expert, however, said he was not accusing the treating physicians of malpractice. *Id.* The circuit court gave Wis JI—Civil 1710 as a jury instruction, and the defendants claimed that such an instruction was improper because there was no expert testimony concluding that the treating physicians were guilty of malpractice. *Id.*

166

¶ 36. The court of appeals disagreed, and held that the expert's testimony was "designed to leave the jury with the impression that part of [the plaintiff's] injuries were caused by his treating physicians and not by the accident," which could have led the jury to reduce damages contrary to the *Selleck* rule. *Id.* at 358.

¶ 37. In this case, the circuit court faced a similar problem with regard to the testimony of Dr. Pawl, the defense expert. His video testimony played to the jury, included the following:

> MR. PARLEE: And doctor, to a reasonable degree of medical certainty, given all the data you have reviewed in this case, including the medical records, the radiological films, test results, deposition transcripts, was Ms. Hanson's cervical fusion and related treatment caused by the accident on June 22 of 2000?
>
> DR. PAWL: No.
>
> MR. PARLEE: Did that accident in any way render the fusion and related treatment medically necessary?
>
> DR. PAWL: No, absolutely not.
>
> MR. PARLEE: Do you feel that the surgery on Ms. Hanson was in and of itself medically necessary?
>
> DR. PAWL: No, I do not. I do not feel it was necessary.

¶ 38. On cross-examination, Hanson's counsel asked Dr. Pawl the following:

> MR. WARSHAFSKY: You think Dr. Lloyd committed malpractice, isn't that true?
>
> DR. PAWL: I didn't review it to the extent of answering that question, but there is no question in my mind it is my opinion that that surgery was not indicated.

167

MR. WARSHAFSKY: If a doctor does surgery that's clearly not indicated, isn't it malpractice?

MR. PARLEE: I object in that calls for a legal conclusion. It is also irrelevant to the case.

DR. PAWL: It can be malpractice, but it is not necessarily malpractice.

MR. WARSHAFSKY: Do you think Dr. Lloyd was negligent, or incompetent, or what?

DR. PAWL: No, I think he did a very good job on the surgery.

MR. WARSHAFSKY: A good job on the surgery. Do you think he was incompetent doing the surgery to start with?

DR. PAWL: No, if he were incompetent he wouldn't have done a good job with the surgery.

MR. WARSHAFSKY: Do you think he was incompetent in his diagnosis that led him to do surgery?

DR. PAWL: Yes, I clearly disagree with that, yes.

¶ 39. Although the defendants may not have intended to raise an issue of medical malpractice with this questioning of Dr. Pawl, that is what happened. Clearly though, malpractice was not an issue in the case, as no doctors were named in the lawsuit, and the circuit court believed a curative instruction was necessary. In other words, Dr. Pawl's testimony might have left the jury with the impression that part of Hanson's injuries were caused by Dr. Lloyd and not by the accident. "If believed, this testimony could have led the jury to reduce the award of compensatory damages to [Hanson] accordingly. Such a reduction would have been contrary to the [*Selleck* rule.]" *Lievrouw,* 157 Wis. 2d at 358. Thus,

the circuit court, in its discretion, concluded that using Wis JI—Civil 1710 was appropriate.

¶ 40. However, Wis JI—Civil 1710 was not used by the circuit court in this case. Instead, the circuit court gave the instruction quoted above. The court of appeals interpreted this instruction as follows:

> By telling the jury that it could not consider the doctor's alleged malpractice, and at the same time telling the jury it must find that all treatments were related to the accident, the trial court let the jury decide that the treatment it concluded was unnecessary was not 'caused' by the accident, and was therefore not compensable. That is not the law in Wisconsin. . . . In effect, the trial court told the jury that regardless of whether the surgery was unnecessary, they could not award the cost of the surgery unless the jury 'relate[d] them to the accident, those injuries.'

*Hanson,* No. 2004AP2065, ¶ 25. We agree with the court of appeals that the instruction, as read to the jury, was an erroneous statement of Wisconsin law. The modified version created by the court was unnecessary and only brought serious confusion into play.

¶ 41. Having concluded that the jury instruction was erroneous because it was directly at odds with current Wisconsin law, we must determine whether a new trial is necessary.

■

¶ 42. We conclude that based on the jury's awarding of only pre-surgery past medical expenses, this instruction probably misled the jury. That is, although the jury determined that Hanson had been injured in the accident, it granted her only $25,000 in past medical expenses, as opposed to the full amount of $78,123.97. It appears that the amounts awarded for the remaining damages were also limited to damages incurred prior to

169

the surgery. Because the jury misapplied the law as to past medical expenses, there is a reasonable probability of a different outcome with respect to the remaining damages at issue if the jury is correctly instructed on the law. Therefore, we agree with the court of appeals that a new trial is necessary on the remaining damages at issue.

## V

¶ 43. We hold that because the jury concluded that Hanson was injured in the accident, she was entitled to all of her past medical expenses, regardless of whether Hanson's treating physician performed an unnecessary surgery, under the rule first enunciated in *Selleck,* 100 Wis. 157, as Hanson used ordinary care in selecting her doctor. Furthermore, we hold the jury's verdict arose from an erroneous and confusing jury instruction such that there is a reasonable probability of a different outcome on the remaining damages at issue. As such, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree that the cause should be remanded for a new trial on damages.

¶ 45. Our case law and the Restatement (Second) of Torts, upon which our case law substantially relies, make clear, as the majority opinion explains, that a tortfeasor is liable for damages sustained by an injured plaintiff when being treated for an injury sustained in the collision at issue.

¶ 46. The problem in the instant case is that Caldwell et al., the defendants, may have tried to put

170

forth two different theories of nonliability. Under one theory, the surgery was performed as treatment for injuries sustained in the collision, but the surgery was unnecessary. *Selleck* clearly forecloses this defense.

¶ 47. The defendants may have also tried to advance a second theory, that is, that the surgery, necessary or not, was performed not to treat the injuries Hanson, the plaintiff, sustained in the collision at issue, but, rather, to treat an injury Hanson sustained at some other time. This theory, however, was not well developed by the defendants and was blended with the argument that the surgery was simply unnecessary. *See* majority op., ¶¶ 37–38 and the trial transcript quoted therein. The court of appeals clearly saw that the defendants' arguments were intertwined, overlapping, and confusing, and ultimately concluded, as has the majority opinion, that the record raised the *Selleck* issue: "The only issues were whether Hanson was injured by the accident, and the extent of those alleged injuries. Caldwell's theory of the case was that the impact could have been great enough to cause a strain, but was not great enough to cause structural damage necessitating surgery. Thus, Caldwell argued, the surgery was unnecessary." *Hanson v. Am. Family Mut. Ins. Co.,* No. 2004AP2065, unpublished slip op., ¶ 6 (Wis. Ct. App. Nov. 8, 2005).

¶ 48. We are thus left with a muddled defense and a muddled record. I am therefore satisfied that the majority opinion correctly concludes that on the record before the court, the *Selleck* rule applies and the plaintiff is entitled to a new trial on the issue of damages.

¶ 49. For the reasons set forth, I concur.

¶ 50. DAVID T. PROSSER, J. (*dissenting*).

171

¶ 51. "Post hoc, ergo propter hoc" is Latin for: "after this, therefore because of this." *Black's Law Dictionary* 1186 (7th ed. 1999).

¶ 52. "Post hoc, ergo propter hoc" is a logical fallacy that assumes that if one event occurs after another, then the first event caused the second event.

## I. INTRODUCTION

¶ 53. The majority purportedly applies the rule set forth in *Selleck v. Janesville,* 100 Wis. 157, 75 N.W. 975 (1898). The *Selleck* rule provides that "a defendant who causes injury is responsible for any aggravation that results from improper medical treatment, as long as the plaintiff has 'exercised good faith and due care' in selecting his or her treating physicians." *Lievrouw v. Roth,* 157 Wis. 2d 332, 358, 459 N.W.2d 850 (Ct. App. 1990). In *Fouse v. Persons,* 80 Wis. 2d 390, 259 N.W.2d 92 (1977), the court commented that "[t]he rule for awarding damages for injuries *aggravated* by subsequent mistaken medical treatment was established in *Selleck." Id.* at 397 (emphasis added); *see Selleck,* 100 Wis. at 163.

¶ 54. Although the *Selleck* rule remains good law, the issue presented in this case is whether the *Selleck* rule is applicable. In my view, the *Selleck* rule does not apply until the plaintiff establishes a causal connection between the defendant's negligence and the injury or condition for which a physician renders improper medical treatment. Stated differently, it is not enough to show that the defendant caused an injury. The plaintiff must establish a chain of causation between the defendant's negligence and any injuries for which the defendant seeks damages. A coincidental correlation is not sufficient.

¶ 55. These principles are recognized in existing jury instructions. (1) If a defendant causes injury A, the

defendant is responsible for all the damages arising from injury A, including improper medical treatment that aggravates injury A. *See* Wis JI—Civil 1710. (2) If a defendant causes injury A and injury A aggravates existing injury or condition B, the defendant is responsible for all resulting damages. *See* Wis JI—Civil 1715. (3) If a defendant causes injury A, the defendant is responsible for all damages arising from injury A but not damages arising from injuries that are not in the chain of causation. See Wis JI—Civil 1720, which provides:

> [Y]ou cannot award any damages for any (pre-existing disease, condition, or ailment) (predisposition to disease) *except insofar as you are satisfied* that the (disease, condition, or ailment) (predisposition to disease) has been (aggravated) (activated) by the injuries received in the accident on (date). If you find that the plaintiff had a (pre-existing disease or condition which was dormant) (predisposition to disease) before the accident but that such (disease or condition) (predisposition to disease) was (aggravated) (brought into activity) because of the injuries received in the accident, then you should include an amount which will fairly and reasonably compensate (plaintiff) for such damages (plaintiff) suffered as a result of such (aggravation) (activation) of the condition.
>
> *Any ailment or disability that the plaintiff may have had, or has, or may later have, which is not the natural result of the injuries received in this accident, is not to be considered by you in assessing damages. You cannot award damages for any condition which has resulted, or will result, from the natural progress of the pre-existing disease or ailment or from consequences which are attributable to causes other than the accident.*
>
> If the plaintiff was more susceptible to serious results from the injuries received in this accident by reason of a (pre-existing disease or condition) (predis position to disease) and that the resulting damages have

173

been increased because of this condition, this should not prevent you from awarding damages to the extent of any increase and to the extent such damages were actually sustained as a natural result of the accident.

Wis JI—Civil 1720 (emphasis added).

¶ 56. This case is changing the law. If a defendant causes injury A, is the defendant responsible not only for injury A but also for injury or condition B, which is not related to injury A, simply because injury or condition B was treated after injury A? The majority's answer appears to be "yes." Notably absent from the majority opinion is any discussion of whether the accident *caused* the injury for which Hanson received surgery. Instead, the majority directs its analysis to two questions: "[1] whether the surgery arose from an initial injury that itself was caused by the accident and [2] whether Hanson used ordinary care in selecting her physician." Majority op., ¶ 25.[1]

¶ 57. The second question is not critical in this case, the first question is. Wisconsin JI—Civil 1720 unquestionably creates a jury question about whether the surgery "arose from an initial injury." In this case, credible evidence supports the jury verdict. The jury verdict is consistent with the inference to a finding that the bodily injury or condition for which Jo-El Hanson underwent surgery was *not* caused by the defendant's negligence.

¶ 58. The majority disagrees. The majority concludes that because the plaintiff experienced neck pain *after* an accident, the accident *caused* the neck pain. Post hoc, ergo propter hoc.

---

[1] Stated otherwise, the majority's opinion means that if a plaintiff can prove a coincidental correlation she can satisfy the causation element of a negligence claim.

¶ 59. Consequently, the majority opinion either absolves the plaintiff from proving causation as an element of her negligence claim as a matter of law, or it completely undermines the sanctity of the jury verdict. To respect trial by jury, the court ought to draw all reasonable inferences in favor of the verdict instead of substituting its own inferences and fact determinations for those of the jury. *See* Wis. Stat. § 805.14(1); *Morden v. Cont'l AG,* 2000 WI 51, ¶ 38, 235 Wis. 2d 325, 611 N.W.2d 659.

## II. BACKGROUND

¶ 60. The facts of this case are as follows. On June 22, 2000, Kevin Caldwell, while driving a truck, struck Jo-El Hanson's car in the rear at a speed of five to seven miles per hour. The next day, Hanson visited her doctor, Dr. Kenneth Saydel, because she was experiencing lower back, neck, and rib pain. About a month after the accident, in July 2000, she was diagnosed with post-traumatic cervical dorsal strain. Although the rib and lower back pain went away after some months with physical therapy, the neck pain remained. In November 2000 Dr. Lynn Ma diagnosed the plaintiff with acute mild right C5–C6 radiculopathy and referred the plaintiff to a neurosurgeon, Dr. James Lloyd. Dr. Lloyd recommended surgery and performed the surgery in February 2001.

¶ 61. The plaintiff filed a lawsuit against the defendants, and the case proceeded to trial. The issues before the court were whether Hanson was injured in the accident and, if so, the extent of those injuries. The evidence adduced at trial reveals conflicting testimony from various doctors as to whether the accident caused the structural damage (the radiculopathy) in Hanson's neck, which led to the surgery.

175

¶ 62. The jury awarded Hanson past medical expenses in the amount of $25,000—roughly the amount of her medical expenses incurred after the accident but before the surgery. Hanson filed a post-verdict motion requesting that she be awarded all past medical expenses, $79,123.97, including the expenses of surgery. After the trial court denied Hanson's motion, she appealed. Applying the *Selleck* rule, the court of appeals reversed the circuit court's order and granted Hanson all her medical expenses, including the cost of surgery, and granted a new trial on the issue of other damages.

## III. SUFFICIENCY OF THE EVIDENCE

¶ 63. This case requires the court to decide whether the evidence is sufficient to sustain the jury's determination. The standard of review for sufficiency of the evidence is narrow: "Appellate courts in Wisconsin will sustain a jury verdict if there is any credible evidence to support it." *Morden,* 235 Wis. 2d 325, ¶ 38. Thus, "if the evidence gives rise to more than one reasonable inference, [the court must] accept the particular inference reached by the jury." *Id.,* ¶ 39. Similarly, the court must accept the jury's inference even if stronger and more convincing evidence supports a contradictory inference. *Id.*

¶ 64. In this case, the standard of review "is even more stringent because the circuit court approved the jury's verdict." *Id.,* ¶ 40. Thus:

> We afford special deference to a jury determination in those situations in which the trial court approves the finding of a jury. In such cases, this court will not overturn the jury's verdict unless "there is such a complete failure of proof that the verdict must be based on speculation."

*Id.* (quoting *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)).

¶ 65. With this standard of review firmly in mind, an appellate court must "search the record for credible evidence that sustains the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not." *Morden*, 235 Wis. 2d 325, ¶ 39. After having reviewed the record, I conclude credible evidence supports the jury verdict.[2]

¶ 66. At trial, the defendants contested the causal connection between the accident and Hanson's radiculopathy. Causation turns on "whether the defendant's negligence was a substantial factor in producing the injury." *Nieuwendorp v. Am. Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W.2d 594 (1995). The jury's decision to limit Hanson's recovery of medical expenses to pre-surgery medical expenses is consistent with a finding that the accident caused some of Hanson's medical problems, but that neither the accident nor Dr. Lloyd's allegedly negligent treatment of Hanson's accident-related injury caused the structural damage (radiculopathy), which prompted Dr. Lloyd to operate.

¶ 67. Credible evidence presented at trial supports the inference that the jury determined the accident caused *temporary soft tissue damage* but did not cause, and was otherwise completely unrelated to, any *structural damage*. Accordingly, the jury could have correctly awarded Hanson the medical expenses she incurred after the accident but before the surgery without violating the rule set forth in *Selleck*.

---

[2] Although the majority correctly states the standard of review, it fails to apply the standard. Instead, the majority replaces its own inferences for those of the jury. By doing so, the majority undermines the function of the civil jury trial, a function that has long been stated "as an essential bulwark of civil liberty." *Galloway v. United States,* 319 U.S. 372, 397 (1943).

¶ 68. In his closing argument, defense counsel forcefully argued that Hanson suffered two distinct injuries or conditions caused by two different sources. He stated:

> [I]t is from a biomechanical standpoint impossible that she could have had any *structural damage* causing surgery. It may be your judgment as a jury that she had some *temporary soft tissue discomfort* as a result of the accident. We are not saying, we are not trying to claim that that's impossible. But if that's the case, her damages should be limited accordingly. (Emphasis added.)

¶ 69. The closing argument was not the first instance where the record displays evidence of two distinct injuries. In defense counsel's opening statement, he stated: "The evidence is going to show with someone like [the plaintiff], an accident like this at the most is going to cause some temporary soft tissue soreness in the neck. . . . And that's the extent of what this accident had caused." Defense counsel also stated to the jury that he was going to present a witness, Dr. Alfred Bowles, who was going to testify that, "from a physical standpoint . . . there was [not] enough force or even injury in the accident to cause any sort of structural problem in the spine that would give rise to surgery."

¶ 70. Defense counsel fulfilled the promise he made to the jury in his opening statement. The record is replete with evidence that the plaintiff suffered from two distinct injuries or conditions. For instance:

(A) When cross-examined, Dr. Lloyd stated that the initial injury from the accident was "post-traumatic cervical dorsal strain" or muscle strain. The muscle strain was of the type one would receive by lifting something too heavy, but it did not involve any prob-

lems with the spinal cord or nerve root associated with structural damage. From this evidence, the jury could have inferred that there were two distinct injuries, one caused by the accident and one not caused by the accident.

(B) During re-direct examination, Dr. Lloyd stated that Hanson had two distinct injuries: permanent nerve root injury and muscle and soft tissue injury. Again, the jury could have found different causes for each distinct injury.

¶ 71. The record also contains evidence that the accident did not cause or lead to treatment that caused the structural damage:

(A) Hanson testified that she had done some horseback riding and sledding before the accident and had done some shoveling after the accident. From this statement, the jury could have inferred that these other activities, not the accident, caused the structural damage that led to the surgery.

(B) Upon direct examination, Dr. Lloyd stated that since the time of the accident, Hanson had "complained of posterior neck pain radiat[ing] into her right arm and numbness into her hand, and that she also noticed weakness of her right arm." Upon cross-examination, however, Dr. Lloyd acknowledged that even *before* the accident, Hanson had complained of some hand numbness. The jury could have inferred from these statements that because Hanson experienced some of the same symptoms of structural damage *before* the accident, the structural damage existed before the accident, and that the accident did not cause the structural damage.

(C) Upon direct examination, one of the defendant's experts, Dr. Bowles, stated that there was no evidence of a causal relationship between the accident and the structural damage:

179

> I can't find a ... causal relationship between the impact, the impact related movement of the car and her body that would lead to the types of medical problems that are seen and treated down the road, especially related to the cervical spine and cervical nerve roots and pain and symptoms in the upper extremity.

He acknowledged, however, that the accident could have caused some kind of minor injury, such as muscle strain. The jury could have determined that the accident caused the muscle strain but not the structural damage.

(D) Upon cross-examination, Dr. Bowles stated that the structural damage could have been caused by an impact-related injury, but that it could also have been caused by a non-impact-related injury. Dr. Bowles stated that there are other factors that cause nerves not to conduct well.

¶ 72. While the record contains evidence contrary to the inference that the accident caused structural damage,[3] an appellate court must "view[] the evidence in a light most favorable to the jury verdict and ... accept[] the particular inferences drawn by the jury." *Morden,* 235 Wis. 2d 325, ¶ 41. The majority fails to search the record for evidence supportive of the jury verdict and dismisses the possibility that the jury could have reasonably found that there were two distinct injuries or conditions, one caused by the accident and one unrelated to the accident or the subsequent treatment. By ignoring this possibility and awarding full damages as a matter of law, the majority either usurps

[3] Interestingly, it was not until the plaintiff's closing argument that the plaintiff asserted the theory that negligent treatment of the muscle strain caused the structural damage to the neck. The evidence adduced at trial does not support this assertion.

the role of the jury or effectively eliminates one element of negligence: causation.[4] By allowing Hanson to recover damages for an injury that may not have been caused by the accident or by subsequent treatment of an accident-related injury, the majority expands the *Selleck* rule and embraces a fallacy.

¶ 73. The *Selleck* court stated: "The plaintiff is not held responsible for the errors or mistakes of a physician or surgeon in treating an *injury received by a defect* in the street or sidewalk, providing she exercises ordinary care in procuring the services of such physician." *Selleck,* 100 Wis. at 163 (emphasis added). The *Selleck* rule, therefore, recognizes liability for unnecessary medical treatment, but only for treatment of injuries *caused* or aggravated by the accident.

¶ 74. The importance of first establishing a causal connection between the defendant's negligence and the injury aggravated or caused by a treating physician's negligence was made clear in *Butzow v. Wausau Memorial Hospital,* 51 Wis. 2d 281, 285–86, 187 N.W.2d 349 (1971). The court explained that the *Selleck* rule reflects a public policy determination as to "where the line of causation should end." *Id.* at 286. Thus, the *Selleck* rule presupposes causation and becomes relevant once a plaintiff establishes a causal connection between the defendant's negligence and the plaintiff's bodily injury for which treatment is provided. *See id.*

---

[4] The majority's view of this case stands in stark contrast to how the circuit court perceived this case. After hearing all the evidence at trial and before instructing the jury, the circuit court judge explained: "[T]his court has an obligation to direct this jury and keep their eye on the ball here and this is a *causation* case. It's nothing more than that on these facts." (Emphasis added.)

181

¶ 75. Whether the defendant's negligence caused the structural damage to Hanson's cervical vertebrae was hotly disputed at trial. Nevertheless, the majority assiduously avoids the question of whether the surgery was causally related to the accident. Rather, the majority focuses its discussion on "whether the surgery arose from an initial injury that itself was caused by the accident." *Id.* Under this extension of the *Selleck* rule, a plaintiff is able to recover damages for any medical treatment as long as the treatment was prescribed as a result of inquiry about an accident-related injury.

¶ 76. To illustrate, imagine that a plaintiff is injured in a car accident and immediately experiences pain in her big toe and then, a couple days later, experiences inflammation and discomfort in the ball of her foot. She visits a doctor who finds that she has fractured her big toe, and who diagnoses her as in need of surgery to remove an extra bone in the ball of her foot.[5] The doctor reasons that the accident probably aggravated the tendon that attaches to this extra bone. It turns out, though, that the doctor was wrong in two regards: (1) the surgery was not necessary, and (2) the aggravation of the plaintiff's tendon was caused not by the accident but by the plaintiff having run a marathon three days before the accident.

¶ 77. Under the majority's interpretation, if the jury were to find that the accident caused the fractured toe, then, as a matter of law, the defendant would be liable not only for the damages associated with the fractured toe, but also for the damages associated with the inflamed tendon, including the resulting surgery,

---

[5] This is an actual medical condition called accessory navicular syndrome.

even though there was no causal connection between the accident and the presence of the extra bone.[6]

¶ 78. Thus, the majority effectively eliminates the need to prove causation in certain situations. This makes Wis JI—Civil 1720 a dead letter, replacing it with the reasoning of post hoc, ergo propter hoc.

## IV. THE JURY INSTRUCTIONS

¶ 79. The majority concludes the jury instruction "was an erroneous statement of Wisconsin law[]" and that it "probably misled the jury." Majority op., ¶¶ 40, 42. Ultimately, its analysis of this issue proves conclusory and unconvincing.

¶ 80. A circuit court "has broad discretion when instructing a jury." *Fischer v. Ganju,* 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). "A challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial." *Id.* "An error is prejudicial if it probably and not merely possibly misled the jury." *Id.* at 850. "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Id.*

¶ 81. The majority uncritically adopts the court of appeals' analysis that the jury instruction misstated Wisconsin law because it allowed the jury to "decide that the treatment [the jury] concluded was unnecessary was not caused by the accident, and was therefore not compensable." Majority op., ¶ 40 (quoting *Hanson*

---

[6] This scenario is different from a scenario where the doctor was negligent and aggravated the tendon while treating the fractured toe. In that case, the defendant would be liable for the damage to the tendon under the *Selleck* rule because the doctor aggravated a pre-existing injury while treating an accident-related injury.

*v. Am. Family Mut. Ins. Co.*, No. 2004AP2065, unpublished slip op., ¶ 25 (Wis. Ct. App. Nov. 8, 2005)).

¶ 82. The jury instruction did not misstate Wisconsin law. Wisconsin JI—Civil 1710 sets forth the rule that a defendant is liable for the damages for injuries aggravated by subsequent mistaken medical treatment. *See also Fouse*, 80 Wis. 2d at 397. Instruction 1710 includes three concepts: (1) The plaintiff must have exercised ordinary care in selecting the doctor who allegedly committed malpractice; (2) The doctor's malpractice must have aggravated injuries caused by the defendant's negligence; and (3) The defendant is liable for the entire amount of damages, including damages attributable to the doctor's malpractice.

¶ 83. All three of these concepts were clearly present in the instructions read to the jury.

(1) The jury was told Hanson "used ordinary care in selecting her treating doctors." The first concept in Instruction 1710 was conveyed to the jury.

(2) The jury was told "that a defendant who causes injury is responsible for any aggravation that results from . . . the alleged improper medical treatment *for that injury*[.]" (Emphasis added.) The second concept in Instruction 1710 was conveyed to the jury.

(3) The jury was told, "[i]f you relate them to the accident, the injuries, she should receive the entire amount of damages she sustained for that, those procedures." Moreover, the jury was told that the damages "should not be decreased because a defense doctor questions the procedure used by the plaintiff's treating doctors." In other words, even if there were testimony that the surgery was unnecessary, the jury would have to award damages for the surgery if the injury for which the surgery was performed were caused by the defendant's

184

negligence. The third concept in Instruction 1710 was conveyed to the jury.

¶ 84. Although the circuit court did not read Instruction 1710 word-for-word, its content was adequately conveyed to the jury.

¶ 85. The fault the majority finds in the jury instructions reflects its failure to acknowledge that there are more than two possible causes for Hanson's structural damage. While the accident or subsequent negligent treatment of the muscle strain *could* have caused or aggravated the structural damage, something *unrelated* to the accident or to treatment of the accident-related injury also *could* have caused the structural damage.

¶ 86. Before the *Selleck* rule even comes into play, there must be a causal relationship between the injury for which treatment is given (i.e. the radiculopathy) and the defendant's negligence. It is not sufficient that the defendant's negligence caused "an injury," majority op., ¶ 20; the defendant's negligence must have caused *the* injury that the doctor's malpractice aggravates, or the doctor's malpractice in treating the accident-related injury must cause another injury. When the majority concludes that the jury instructions probably misled the jury, it effectively absolves Hanson of proving that the accident caused the radiculopathy.

¶ 87. The instructions advised the jury to award damages only if the jury found a causal connection between the accident and the injury for which Dr. Lloyd performed surgery and *not* to reduce damages if it found that Dr. Lloyd was negligent in his treatment of that injury. Contrary to the majority's conclusory statement, the instruction was a correct statement of the law. Accordingly, I disagree that the jury instructions "probably misled the jury."

## V. REMEDY

¶ 88. The majority remands for a new trial on Hanson's damages for past and future pain and suffering and loss of earning capacity. The majority concludes, "the jury's verdict arose from an erroneous and confusing jury instruction such that there is a reasonable probability of a different outcome on the remaining damages at issue." Majority op., ¶ 3. The majority remands for a new trial on *damages only,* even though the part of the jury instructions the majority condemns deals with causation and even though there was sufficient trial testimony to allow the jury to conclude that the accident did not cause Hanson's radiculopathy. If the case is to be remanded, it should be remanded for a new trial on liability *and* damages.

## VI. CONCLUSION

¶ 89. In its decision, the majority significantly expands the *Selleck* rule, transforming it into another exception to the need to prove causation in a negligence claim. The smokescreen put up by the concurrence cannot obscure the fact that the majority creates a new rule of law.

¶ 90. On these facts and under the law of negligence as it existed prior to today's decision, there is no justification for an appellate court to award damages not awarded by the jury or the circuit court. In my view, the judgment of the circuit court should be affirmed.

¶ 91. For the reasons stated, I respectfully dissent.