PER CURIAM.
¶ 1 Estate of Daniel Derousseau[1] appeals from a judgment dismissing all claims against Dunn County, Greg Lambert, and Wisconsin County Mutual Insurance Company (collectively "the County"), following a jury trial. Derousseau argues the circuit court erred by failing to change the jury's answer on the special verdict regarding negligence, and by improperly instructing the jury in several respects. We reject Derousseau's arguments and affirm.
BACKGROUND
¶ 2 This matter arises out of a January 27, 2013 motor vehicle accident on Highway 64 in Dunn County. Lambert was operating a westbound snowplow while spreading salt on the highway at a point where the road ascends a hill and curves to the right. At the time of the accident, rain and sleet were falling, and slush was located along the shoulder of the road.
¶ 3 Derousseau was operating an eastbound Pontiac Sunbird travelling downhill and lost control of his vehicle as he approached the snowplow near the curve. Derousseau's vehicle rotated sideways, crossed the center line, sideswiped a vehicle following the snowplow, and then struck a second vehicle that was also traveling behind the snowplow. Derousseau sued the County, alleging Lambert negligently operated the snowplow by crowding and/or crossing the center line, causing Derousseau to move to the shoulder, lose control, and subsequently collide with the other vehicles.
¶ 4 Prior to trial, the County proposed a jury instruction based upon WIS. STAT. § 346.05(2) (2015-16),[2] stating that the operator of a vehicle engaged in maintaining the highway may operate on the left-hand side of the highway.[3] After argument, the circuit court decided to give the instruction as the County proposed. Derousseau proposed a modified jury instruction based on purported industry standards applicable to "salt and sand truck drivers on the road." The court declined to give the industry standards instruction, concluding that Derousseau did not produce any evidence of industry standards through expert testimony, learned treatises, or industry guidelines.
¶ 5 The jury concluded Lambert was not negligent at the time of the accident, and it attributed 100% responsibility for the accident to Derousseau. After trial, Derousseau moved to change the jury's verdict answer that Lambert was not negligent. The circuit court denied the motion, citing evidence that Lambert was in his lane of traffic with his hazard lights activated, and was traveling between twenty and thirty miles-per-hour at the time of the accident. Derousseau also challenged the court's decision to instruct the jury on WIS. STAT. § 346.05(2), as well as its decision not to give the proposed instruction on industry standards. The court rejected these challenges. This appeal follows.
DISCUSSION
¶ 6 We will sustain the circuit court's refusal to change a special verdict if there is any credible evidence that, under any reasonable view of that evidence, supports the jury's verdict. Hanson v. American Family Mut. Ins. Co. , 2006 WI 97, ¶ 18, 294 Wis. 2d 149, 716 N.W.2d 866. Here, the circuit court correctly recognized that credible evidence allowed the jury to reasonably conclude Lambert was not negligent. Lambert testified at trial that his entire truck was within his lane of traffic as Derousseau's vehicle approached, his hazard lights were activated, he was driving between twenty-five and thirty miles-per-hour, and he "was probably doing slower than [that] because I was fully loaded going up a hill."
¶ 7 Conversely, there was evidence to show that the accident was caused by Derousseau, who was negligently driving at an excessive speed considering the poor weather and road conditions, with poorly maintained tires, resulting in a loss of control and a collision with vehicles behind Lambert's snowplow truck. Testimony established that Derousseau passed a cautionary fifty miles-per-hour sign on the top of the hill as he began down the hill. Expert witness testimony established that cautionary signs assume good road conditions. The "black box" in Derousseau's vehicle showed that he was driving approximately fifty-five miles-per-hour on slippery road conditions six seconds before impact and that he first applied his brakes approximately three seconds before impact. In addition, his vehicle had minimum tread on one of the tires, creating the opportunity for loss of traction on the slippery surface. Witnesses also described that Derousseau had lost control of his vehicle. In fact, the expert witness called by Derousseau testified that Derousseau's vehicle was the only vehicle that lost control in the accident.
¶ 8 Derousseau nevertheless insists Lambert had a "superior ability to react to the hazard" created by the road conditions and the oncoming traffic. Derousseau further claims Lambert was negligent "because there was a period of 500-600 feet where he should have seen Derousseau's vehicle and didn't." According to Derousseau, "the jury's determination Lambert was not negligent in the face of expert opinion based on objective fact is not supported by credible evidence and supports the grant of a new trial."
¶ 9 However, it is clear from the verdict that the jury rejected the inference that Lambert had a superior ability to react that amounted to negligence, and the jury was entitled to do so. The credibility of witnesses and weight to be accorded to their testimony are left to the jury's judgment, and where more than one inference is possible, the inference drawn by the jury must be accepted. Roach v. Keane , 73 Wis. 2d 524, 536, 243 N.W.2d 508 (1976). The circuit court did not err when it denied Derousseau's motion to change the special verdict answer.
¶ 10 Derousseau next argues the circuit court erred as a matter of law when it instructed the jury that Lambert was allowed to operate his maintenance vehicle left of the center of the road while salting the roadway, pursuant to WIS. STAT. § 346.05(2). We review a circuit court's conclusions as to what jury instructions are appropriate for an erroneous exercise of discretion.[4] Fischer v. Ganju , 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). A circuit court has wide discretion in choosing the language of jury instructions, and if the overall meaning of the instructions is a correct statement of the law, no grounds for reversal exist. Id. at 849-50.
¶ 11 WISCONSIN STAT. § 346.05(2) allows a vehicle "actually engaged in constructing or maintaining the highway [to] operate on the left-hand side of the highway." Although the term "maintaining" is not defined within § 346.05(2), the circuit court appropriately utilized a common understanding of the term by concluding a snowplow driver who is spreading salt on a highway is maintaining the highway so that other drivers can safely drive on it. The statute recognizes there are times when highway maintenance vehicles may need to operate a vehicle left of center in order to properly perform their work. In this regard, the court reasoned:
If you couldn't snowplow left of center, you would make and leave a ridge in the middle of the roadway which could freeze and become a ridge that cars going from one lane to the other could hit that ridge and cause a greater hazard. Common sense suggests you wouldn't maintain your highways that way. React to that. That's a question that seemed pretty clear to the Court all along as to why the Court has correctly interpreted and applied maintaining the highway.
¶ 12 The circuit court's commonsense interpretation is bolstered by WIS. STAT. § 84.07, entitled "Maintenance of state trunk highways." Section § 84.07(1) provides:
Maintenance activities include the application of protective coatings, the removal or control of snow, the removal, treatment, and sanding of ice, interim repair of highway surfaces and adjacent structures, and all other operations, activities, and processes required on a regular, continuing basis for the preservation of the highways on the state trunk system.
¶ 13 Derousseau argues the circuit court's usage of the term "maintaining" misled the jury and "advised jurors an operator was given an absolute exemption from the rules of the road." This argument is meritless. WISCONSIN STAT. § 346.05(2) provides that a maintenance driver may drive on the left-hand side of the road, but it does not give blanket authority to do so, and it does not exempt a maintenance driver from the other rules of the road or permit the driver to act negligently.
¶ 14 Furthermore, after instructing the jury that Lambert was allowed to operate his maintenance vehicle left of center while salting the roadway, the circuit court instructed the jury that all drivers must exercise ordinary care; exercise proper lookout; exercise management and control; and maintain a reasonable speed. As the court recognized, the instructions to the jury as a whole made clear that maintenance drivers may operate on the left-hand side of the road, as long as they do so with ordinary care and in compliance with the other rules of the road. In closing arguments, both counsel also advised the jury of these obligations. Accordingly, the court properly exercised its discretion in choosing the language of the jury instruction regarding operating maintenance vehicles left of center.[5]
¶ 15 Derousseau next argues the circuit court erred by refusing to instruct the jury regarding industry standards for "salt and sand truck drivers on the road." Derousseau proposed the following modified instruction:
1019 NEGLIGENCE: EVIDENCE OF STANDARD IN THE INDUSTRY (AS MODIFIED)
Evidence has been received as to the standard in the industry with respect to salt and sand truck drivers operating a salt and sand truck on the road. You should consider this evidence in determining whether the defendant acted with ordinary care. This evidence of the standard in the industry is not conclusive as to what meets the required standard for ordinary care or reasonable safety. What is generally done by persons engaged in a similar activity has some bearing on what an ordinary prudent person would do under the same or like circumstances. A custom or practice which has a good safety record could aid you in determining whether the defendant was negligent.
¶ 16 Derousseau argues he "sought to call former Dunn County employees to establish the habitual practice of Dunn County drivers not operating a salt truck over the center line because there is no need to and that Lambert's operation on the date of the accident was inconsistent with such practices." Derousseau insists "[t]he trial court prohibited Plaintiff from calling any of these witnesses aside from Scott Stuart and Scott Malean and limited the inquiry to the written policies of Dunn County practices." Derousseau claims he made an offer of proof in the form of deposition transcripts; however "the Court declined to give Plaintiff's requested instruction on the standard of care in the industry." Derousseau also insists "Lambert's affidavit" was sufficient to warrant the instruction regarding standards in the industry, but the circuit court ruled in post-verdict motions that Lambert's affidavit on the standards in the industry was not enough to warrant the instruction.
¶ 17 Derousseau's argument on this issue is conclusory, difficult to understand, and generally undeveloped. Derousseau's appellate briefs fail to conform to the requirements of WIS. STAT. RULE 809.19(1)(e), stating that the argument section of an appellate brief must include citations to the parts of the record relied on. Derousseau does not provide a single citation to the record on appeal in support of his argument concerning this issue, and we will not search the record for evidence to support a party's arguments. See Stuart v. Weisflog's Showroom Gallery, Inc. , 2006 WI App 109, ¶ 36, 293 Wis. 2d 668, 721 N.W.2d 127. In addition, Derousseau fails in his appellate briefs to identify the uncalled witnesses, or to show with specificity what their testimony would have been, much less demonstrate how their absence prejudiced the trial.
¶ 18 In any event, Derousseau called Stuart and Malean at trial, but he did not ask either about the industry standards.[6] Derousseau also called Lambert adversely, but he failed to ask him directly about industry standards as well. At one point, Derousseau's counsel read Lambert the following lines from an earlier affidavit:
Q: ... Exhibit 20. Here it is. Actual [sic] it says a bit more about that. Here. I'll ask you if I read it correctly from the actual exhibit. The width and depth of the salt can be adjusted to apply a heavier layer of salt on the curves. When the truck is on the inside lane of the curve, the low side, plow truck drivers need to move the truck towards the higher left side of the lane in order to spread salt on the higher side so both lanes have salt on a single pass. The concentrated application of salt will begin melting and create a salt line which will migrate across the road by means of the slope of the road and vehicles either pick up and disperse the salt and salts are thrown throughout the roadway as well to continue the deicing process. I read from that paragraph, the first paragraph ... on Exhibit 28 [sic] correctly, have I?
A: Yes.
Q: And then it says this method of salt distribution, the standard practice in this industry in this area and especially on a road with curves and hills like State Highway 64, it is necessary to ensure public safety. Did I read that correctly?
A: Correct.
¶ 19 Derousseau's counsel did not ask any further questions about industry standards. At the jury instruction conference, Derousseau requested the jury instruction on industry standards, but the circuit court declined to give the instruction because there was no substantive evidence on industry standards given at trial:
THE COURT: ... I think it was you indicated it was read from an affidavit that that's what it was and here is the Court's ruling as far as whether that particular one sentence that was put into evidence in this trial would rise to the level of evidence of [custom] and usage, I think not. The paucity of that evidence is not sufficient to rise to the level of establishing a custom and usage and or standard in the industry for the salting of a highway as the way the testimony-or the testimony and evidence that was presented in this trial, none of that rises to the level of where one could legitimately argue that was evidence of [custom] and usage. So the Court has denied that-the inclusion of instruction.
¶ 20 It is error to instruct on an issue that the evidence does not support. See Nowatske v. Osterloh , 198 Wis. 2d 419, 428, 543 N.W.2d 265 (1996), abrogated on other grounds by Nommensen v. American Cont'l Ins. Co. , 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301. If Derousseau desired to make industry standards regarding snowplow operation a legitimate issue in this case, he could have called expert witnesses concerning industry standards, otherwise introduced industry guidelines, or simply asked the witnesses at trial about the industry standards. Derousseau did none of these things. The circuit court properly exercised its discretion by declining to give the jury instruction concerning industry standards.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Derousseau passed away before trial for reasons unrelated to the accident. For ease of reading, throughout this opinion we refer to both the Estate of Derousseau, in its capacity as a current litigant, and Daniel Derousseau, during the relevant time period in which he was alive, both as "Derousseau."

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The proposed jury instruction stated:
EXCEPTIONS TO RULES OF THE ROAD FOR VEHICLES ENGAGED IN HIGHWAY MAINTENANCE [ Wis. Stat. ] § 346.05(2)
A safety statute provides that the operator of a vehicle engaged in highway maintenance is not required to follow certain rules of the road that apply to other vehicles. This includes the rule requiring that vehicles operate to the right side of the roadway.
The operator of a vehicle actually engaged in maintaining the highway may operate on the left-hand side of the highway.

Derousseau uses the phrase "abuse of discretion." The terminology used in reviewing a circuit court's discretionary act changed from "abuse of discretion" to "erroneous exercise of discretion" in 1992. See, e.g. , State v. Plymesser , 172 Wis. 2d 583, 585-86 n.1, 493 N.W.2d 367 (1992).

Derousseau also argues the term "highway maintenance" is specifically controlled by a definition in Wis. Stat. § 340.01(22e), which defines the phrase "[h]ighway maintenance or construction area." This definition highlights an area rather than an activity , and the purpose of the defined term in § 340.01(22e) is to protect workers as they perform maintenance or construction activities in areas of moving traffic. We are not persuaded by Derousseau's argument that the word "area" applies only to the term "construction" and not to "highway maintenance."

Derousseau briefly states that he understood the circuit court's pretrial rulings as prohibiting him from asking questions about unwritten snowplow policies and procedures in Dunn County. However, he then acknowledges that, during post-verdict proceedings, the circuit court expressly stated it made no such ruling.